109  371
s 115  466

DETROIT & ERIN PLANK-ROAD CO. *v.* MACOMB CIRCUIT JUDGE.

1. PLANK-ROAD COMPANIES—CONSTRUCTION OF ROADBED—INJUNCTION—PARTIES—POLICE POWER OVER HIGHWAYS.

An injunction will lie, at- the suit of a township and its highway commissioner, to restrain a plank-road company from using in the construction of its roadbed material which will render the same dangerous, unsafe, and impassable with loaded teams; and this, independent of any provision in the company's charter, but as a means of enforcing a police regulation.

2. SAME—MODIFICATION OF INJUNCTION.

A circuit judge, who has issued an injunction restraining a plank-road company from using upon its road material other than that prescribed by the terms of its charter, may modify such injunction, if he is satisfied that to do so will be advantageous to the public, and will not result in the creation · of a public nuisance.

*Mandamus* by the Detroit & Erin Plank-Road Company to compel James B. Eldredge, circuit judge of Macomb county, to dissolve an injunction restraining relator from "placing or using in the construction of its roadbed any material except plank or gravel, or stone so broken as to subserve the purposes of gravel, or any material from which the dirt, sand, and stones one and one-half inches in diameter or more have not been sifted or removed." Submitted April 21, 1896. Writ denied May 19, 1896.

*Byron R. Erskine* (*Charles M. Swift*, of counsel), for relator.

*Canfield & Spier*, for respondent.

MOORE, J.   This is an application for a writ of *mandamus* to compel the circuit judge of Macomb county

to dissolve an injunction.    The facts, the questions involved, and the legislation in reference thereto, are fully stated by Judge Eldredge in his opinion, which reads as follows:

"The Gratiot road or turnpike was laid out and constructed as a military road, pursuant to an act of Congress approved March 2, 1827, entitled 'An act to authorize the laying out and opening of certain roads in the territory of Michigan.'  4 U. S. Stat. at Large, 231.    In 1830, by an act of the legislature of Michigan approved July 21 (Laws 1830, p. 7; 3 Terr. Laws, p. 820), it was provided that 'the military roads constructed, after acceptance by the government, shall be taken, used, and occupied as public highways.'    Section 2 of said act is as follows:  'SEC. 2. That the commissioners and overseers of highways in the several districts and townships through which the said roads may or shall lead, be laid out, constructed, and accepted, shall have and possess the same authority over such roads as they now have or may hereafter have and possess over the public highways within their districts or townships.'

"In 1848 the legislature passed 'An act relative to plank roads,' approved March 13, 1848 (1 How. Stat. § 3566 et seq.), and the same year passed 'An act to incorporate the Detroit & Erin Plank-Road Company,' approved April 3, 1848, by section 6 of which the act of March 13, 1848, is made a part of the act of incorporation, which was given immediate effect.    These two acts constitute the original charter of the company.    By the same the company was authorized to enter upon and take possession of so much of the Ft. Gratiot road, so called, as lies between the city of Detroit and the township of Erin, in the county of Macomb, and proceed to construct thereon a plank road. It was undoubtedly the intention to grant the right to possession of the Gratiot road to the point in Erin hereafter called the 'Junction,' mentioned in the second section of the act, from which a branch was authorized to run to Utica.   In 1850 a like charter was given to the Erin & Mt. Clemens Plank-Road Company, and with like provisions, by which this company was authorized to take possession of so much of the Gratiot road 'as lies between the termination of the Detroit & Erin Plank Road, to wit, a point 12 miles from Detroit, and the

township of Mt. Clemens.' This act was approved
March 20, 1850, and given immediate effect. In 1855 an
act was passed (No. 102) amending the act of March 13,
1848, by adding a new section (section 31) permitting all
corporations that had been or .should be organized under
that act to 'substitute gravel instead of plank where plank
is now used, or stone so broken as to subserve the pur-
poses of gravel: *Provided*, that said gravel portion of said
road shall in all cases be not less than nine feet in width,
and the gravel of which the same is constructed be not less
than ten inches deep, *which shall be properly screened:
And provided*, said companies shall be subject to all
the provisions and penalties in regard to keeping said
gravel road in repair as are provided for in said act in
relation to plank roads.' This act was approved Feb-
ruary 12, 1855, and given immediate effect. By an act
approved February 7, 1857, the Detroit & Erin Plank-
Road Company and the Erin & Mt. Clemens Plank-
Road Company were authorized to consolidate under the
name of the former company, which it was provided
should hold the road and property of said company, sub-
ject in all respects to the charter of said company as
amended from time to time, 'and to the provisions of the
act relative to plank roads,' approved March 13, 1848,
and to any amendments thereof, with 'full power and
authority to exercise all the powers, privileges, and fran-
chises granted in their said charter, or by any law of this
State, over the whole line.' This act was given immedi-
ate effect, and provided for the purchase by the Detroit
& Erin Plank-Road Company of the property, etc., of the
Erin & Mt. Clemens Company, and that the consolida-
tion should go into effect when accepted by the respective
boards of directors, and assented to by two-thirds of the
stockholders of each company. Ten days thereafter, an
act was approved (Act No. 184, Sess. Laws 1857) amend-
ing the act of February 12, 1855, permitting the substitu-
tion of gravel for plank, changing the first proviso so that
the gravel was required to be only seven inches in depth,
and omitting the words, *'which shall be properly
screened.'* This provision was again amended in 1879 by
Act No. 221, approved May 23d, changing the said first
proviso so that it required the gravel used to be not less
than nine inches deep, *' and the dirt, sand, and stones
over one and one-half inches in diameter shall be
sifted out and removed from the same.'* 1 How. Stat. §

3594. It does not appear just when the actual consolidation of the two companies was effected, nor does it appear just when the portion of the Gratiot road from the junction to Mt. Clemens—the part constructed by the Erin & Mt. Clemens Plank-Road Company—was graveled. The allegation of the bill relative thereto is that 'several years ago * * * the plank was removed from said extension by said company in accordance with an adoption by said company of Act No. 102 of the Laws of 1855 of said State, as amended in 1857 and 1879, being section 3594, 1 How. Stat.' The defendant plank-road company demurred to the bill, thus admitting the truth of this allegation.

"It was contended on the hearing of this motion that the amendment of section 31 (the section added to the act of March 13, 1848, by the act of February 12, 1855) attempted to be made by the act of May 23, 1879, requiring the dirt, sand, and stones of one and a half inches to be sifted out and removed, when substituting gravel for plank, is void as to the defendant plank-road company; that it is an attempted change of its charter, imposing additional burdens upon the company that had not been assented to by the company, as is required to effect a change in its charter, by section 30 of the act of March 13, 1848.[1] At the date of the passage of the act authorizing the consolidation of the two companies, February 7, 1857, the act of February 12, 1855, was in force, as a part of the act of March 13, 1848. This required the gravel used as a substitute for plank to be 'properly screened.' Under the provisions of section 2 of the consolidation act of February 7, 1857, at least the requirements of the act of February 12, 1855, must be held to have been accepted by the company, and to be a part of the contract between the State and the company. It is one of the amendments that had been made to the charter of the company (the act of March 13, 1848), and consolidation was a sufficient acceptance thereof. The act of February 17, 1857, was given immediate effect, and whether it became an amendment of the charter of the company before actual consolidation, or not, does not appear; nor does it appear that it was ever accepted by certificate of assent filed as required by section 30 of the act of March 13, 1848. There may be a question whether

---

[1] This section was added to the act of 1848 by Act No. 44, Laws of 1853, approved February 9, 1853.

this amendment,—the one of February 17, 1857,—or the one of May 23, 1879 (1 How. Stat. § 3594), is included in the term 'any amendment thereof' (*i. e.*, of the act of March 13, 1848), as used in section 2 of the consolidation act of February 7, 1857. Even if the act of May 23, 1879, is not 'an amendment thereof,' expressly, by the terms of the consolidation act, contemplated and provided for, is it not such a future police regulation that the charter of the company must be regarded as subject to? In *Carver* v. *Plank-Road Co.*, 61 Mich. 584, and 69 Mich. 616, it is held that the provisions of the act to protect travel on public highways, approved May 17, 1877, practically re-enacted in chapter 5 of the act of June 8, 1881 (1 How. Stat. § 1365 *et seq.*), providing for barriers in certain dangerous places in public highways, were such a future police regulation that the charter of a like company, made in 1848, must be, when made, regarded as subject thereto. The act of February 12, 1855, was not an attempt on the part of the legislature to change or impair the contract between the company and the State. It was the proffer of a privilege to substitute gravel for plank, with certain conditions as to the quality of the gravel the company might use. It required no written assent on the part of the company. Its action in making the substitution was an acceptance of the conditions as to the quality of the gravel contained in the proffer of the State. So far as the company acted under the proffer, it must comply with the conditions. Why should not the same rule apply to the act of 1857 and that of 1879 ? Under neither act was the company, in any respect, deprived of any of the privileges or rights granted by the original charter. It was in no wise required to substitute gravel for plank.

"But it was said on the argument of the motion that the company did not accept or assent to the amendment made by the act of February 12, 1855, but that it did accept of the act of February 17, 1857; and it is insisted that thereby the contract between the State and the company became one wherein the company was granted the privilege of substituting gravel for plank, without its being screened,—a privilege to continue during its existence, unless it assented to a change in the contract,— and therefore the amendment in 1879 as to the quality of the gravel to be used was the imposition of an additional burden, and therefore void as to the company, until the

company certifies its assent thereto, pursuant to section 30 of the act of March 13, 1848. It is to be noted that the amendment of 1879 was more than 30 years after the original charter of the company. By the original charter, the provisions of the act of March 13, 1848, were made a part thereof. The two are to be read as one act. Section 5 of the special charter of April 3, 1848, and section 30 of the act of March 13, 1848, are to be harmonized. The former section provides that the legislature may not amend in 30 years unless it shall be made to appear that the company has violated its charter, but after 30 years, impliedly, it may amend, save it shall not reduce tolls unless the net annual profits of the company exceed 10 per cent. on the capital stock. Section 30 of the act of March 13, 1848, provides that the company shall be subject to amendments whenever the company assents. It was clearly not the purpose of the legislature to leave the company the sole determiner of what amendments should have force during its whole life of 60 years. The legislature intended to make the charter unamendable without the consent of the company for 30 years, and it excepted from its power to amend for the remaining 30 years all alteration or reduction of toll, until the annual profits exceed 10 per cent. of its capital stock, but to provide that any amendments made with the consent of the company should have effect, though made within 30 years. The presumption is that the act of 1879 was passed by a vote of two-thirds of each house, in pursuance of section 8 of article 15 of the Constitution. It follows that the act of 1879 is not void as to the defendant plank-road company.

"It was suggested that the court, in its discretion, might modify the injunction so as to avoid the restraint upon the company from the use of pure gravel from which the dirt and sand was sifted. It is evident that the object sought by the legislature in qualifying the quality of gravel to be used as a substitute for plank was to secure a good, hard roadbed in all seasons of the year, in the place of plank. The action of the legislature has been erratic. In 1855, the gravel must *be properly screened.* In 1857, it need not be screened. In 1867, where used on roads organized under the general act of 1851, it need not be screened, but must be at least seven inches deep, and must be of sufficient depth to make, at all seasons of the year, a good, firm, and hard road. In 1879,

roads existing under the act of 1848 can only use gravel
from which the dirt, sand, and stones are sifted and
removed. In 1885, roads acting under the law of 1851
must put the gravel at least a foot deep, and in all cases
of sufficient depth to make a good, firm, and hard road.
In the acts relative to this matter from 1855 to 1885, the
language of the section is practically the same, varying
only in the proviso as to the quality of the gravel. I am
impressed by the affidavits of the experts with the idea
that gravel from which all the dirt and sand are wholly
sifted could not be used to make a road speedily without
great expense. It is evident from the history of the
legislation on this subject that the judgment of the mem-
bers of the various legislatures has varied. But, as the
statute applicable to this road is clear and explicit, I
doubt the power of the court to so modify the injunction
as to waive in any respect full compliance with its pro-
visions. The determination as to the quality of the
gravel to be used is the exercise of a legislative func-
tion, and not a judicial discretion.

"But it is contended that the complainants are not the
proper parties to file the bill; that they are not interested
in or affected by the alleged injuries; and, further, that
there is a full and adequate remedy at law, wherefore
there was no legal authority for granting the injunction;
that the township authorities have no authority or power
of supervision of the Gratiot road; that by its charter the
company was given exclusive possession of the road in
the township of Erin. For some 18 or 20 years prior to
the year 1848, under the act of July 21, 1830, the town-
ship authorities had control and supervision over this road,
the same as they had over other roads laid out by the town
authorities. It was a public highway. Congress passed
no act regarding it after the act of 1827. The possession
of this road given the company in 1848 was for the pur-
pose of constructing and maintaining thereon a plank
road. It did not thereby cease to be a public highway.
*People* v. *Jackson,* 7 Mich. 432; *People* v. *Beaubien,* 2
Doug. (Mich.) 256; *Horn* v. *People,* 26 Mich. 221; *Flint
& Pere Marquette R. Co.* v. *Gordon,* 41 Mich. 426. It is
the settled policy of this State that the care and supervision
of all public highways be in the hands of the highway com-
missioner. *Delta Lumber Co.* v. *Wayne County Board
of Auditors,* 71 Mich. 572. In *Sharp* v. *Township of
Evergreen,* 67 Mich. 443, the rule is applied to State

roads. In 1855 'An act relative to plank road companies' was passed (No. 122), approved February 12, 1855, to take effect in 30 days, in section 5 of which the act of March 13, 1848, is amended by the repeal of parts thereof. In 1875, by Act No. 222, approved May 3d, the act of March 13, 1848, was amended by the addition of a new section (section 32), wherein the supervisory powers of commissioners of highways over plank roads is recognized. At the same time, by Act No. 232, sections 2, 3, and 4 of the act of February 12, 1855, were amended. Section 2 was so amended as to require that plank-road companies which had or might substitute gravel for plank should cause the said gravel or broken stone of proper quality and quantity to be placed upon the road, and kept, in a uniform manner, of the width and depth required by law, and providing that the prosecuting attorney, on complaint of the highway commissioner, in case of default, might institute proceedings in the circuit court, in chancery. In 1877, by Act No. 144, approved May 17, 1877, entitled 'An act to protect travel on the public highways,' in section 8, it is made the duty of the commissioner of highways *to see* that all plank or gravel road companies maintain their roads in as safe a condition as he is by this act required to keep the public highways of his township. This section 8 was amended by Act No. 103 of the Laws of 1895 so as to require the commissioner '*to see*' that the said companies '*maintain their roads in a good and safe condition at all times.*'. The provisions of section 8 of the act of May 17, 1877, are incorporated or re-enacted in section 5, chap. 5, of the act of June 8, 1881 (1 How. Stat. § 1369), but so changed as to require the commissioner to see that said companies keep their roads in as good and safe condition as he is required to keep the public highways of his township. At that time the township was required to keep the public highways in good repair. Act of May 29, 1879, § 4 (1 How. Stat. § 1445). The requirement was changed in section 3 of Act No. 264 of the Laws of 1887 so as to require the public highways to be kept in reasonable repair, so that they shall be reasonably safe and convenient for public travel.

"I am of the opinion that the provisions of the act of 1877 (No. 144), and the subsequent enactments affecting the provisions of that act, imposing duties upon the highway commissioner and township, should be held

police regulations applicable to the defendant plank-road company. They are reasonable and proper, and for the protection of the people, and to prevent injury thereto, such as the charter of this company should be held subject to, within the rule laid down in *Carver* v. *Plank-Road Co.*, *supra.* They cast upon the township a duty relative to said road, a neglect of which may subject the township to liability for injuries resulting to persons and property from defects therein; and, upon the commissioner, duties, a neglect of which may subject him to a penalty, and prosecution by information or indictment, under 1 How. Stat. §§ 1399, 1400. All public officers, even if not expressly authorized by statute, have a capacity to sue, commensurate with their public trusts and duties. *Berrien Co. Treasurer* v. *Bunbury*, 45 Mich. 79; *Auditor General* v. *Railroad Co.*, 82 Mich. 429. The bill is not filed to decree a forfeiture of the franchises of the company. It is filed to enjoin it from using on said road, and constructing a roadbed thereon of, material not such as the statute requires, but such as, if used in the construction of a roadbed, as it is alleged they threaten to, will render said roadbed *dangerous, unsafe, and impassable with loaded teams.* In other words, it is filed to enjoin the creation of a threatened nuisance, dangerous to the traveling public. I cannot assent to the claim of the defendant plank-road company that a court of equity may not enjoin it from rendering the road dangerous and unsafe, at the instance of officers charged with the duty of seeing that it is maintained and kept in good repair, safe for travel. The allegations of the bill as to the effect on the road of the acts threatened are, by the demurrer, admitted. A court of equity, in virtue of its general jurisdiction over trusts, and to afford remedies in cases where courts of law are inadequate to grant relief, has jurisdiction to grant relief against a corporation upon the same terms it might against an individual under similar circumstances. *Stamm* v. *Benefit Association*, 65 Mich. 317. And in my opinion, the township and its authorities, upon whom is charged the duty of seeing that the road is kept safe for the traveling public, have such an interest in the matter as makes them proper complainants to the bill, and that the remedy provided by 1 How. Stat. § 3586 (section 23 of the act of March 13, 1848), is not at all adequate. High, Inj. § 1555; *Town of Burlington* v. *Schwarzman*, 52 Conn. 181; *Craig* v. *People*, 47 Ill.

496; *Easton & A. R. Co.* v. *Inhabitants of Tp. of Greenwich,* 25 N. J. Eq. 565; *Inhabitants of Springfield* v. *Railroad Co.,* 4 Cush. 63. In view of the pleadings, the admission by the demurrer of the truth of the allegations of the bill as to the effect of the use of the material or gravel threatened to be used upon the road by the company in the construction of a roadbed, and in place of gravel,—that it will render said roadbed dangerous, unsafe, and impassable with loaded teams,—I think the motion to dissolve must be denied.

"In view of the importance of this matter, both to the parties and to the public, the questions whether the material threatened to be used will make the road dangerous and unsafe; whether this court, in the exercise of its discretion, can waive any of the requirements of the act of 1879 as to the quality of the gravel used as a substitute for plank in the construction of a roadbed, in case it should be satisfied that thereby a good, firm, and hard road can be made,—I think the court ought to adopt such a course as will tend to have these questions, as well as the one as to the power of the court to enjoin finally, determined as speedily as is consistent with due regard for the rights of those interested; and to that end I will hear, upon settlement of the order now made, the suggestions of counsel.

"My attention has been called to the fact that the injunction issued on the amended bill restrained the use, if literally applied, of any material, including plank, 'except gravel, or stone so broken,' etc., 'from which the dirt, sand, etc., shall be sifted and removed.' This was a clerical error, and not in accordance with the prayer of the bill. The injunction should be so modified as to permit the use of plank in the construction of any roadbed."

We do not deem it necessary to determine just how far the amendment of 1879, that required the gravel used to be not less than nine inches deep, and that "the dirt, sand, and stones over one and one-half inches in diameter shall be sifted out and removed from the same" (1 How. Stat. § 3594), affects this company. Before doing that, we should desire more time for the examination of the authorities than is now available. However, in view of the allegations of the bill of complaint that the proposed

action of the defendant will make the roadbed dangerous, unsafe, and impassable with loaded teams, which bill was demurred to by the defendant, and which had the effect of admitting the allegations of the bill to be true, we have no doubt that, under the police power given over public highways, it was competent for the commissioner of highways, and the township of Erin, to commence this proceeding, and for the circuit judge to issue the injunction.   Neither have we any doubt that the circuit judge has a right to modify the injunction, if he is satisfied, from the showing made before him, that to do so would be to the advantage of the public, and would not result in the creation of a threatened nuisance, dangerous to the traveling public.   We place his right to issue the injunction and to modify it, in view of the pleadings and the affidavits accompanying them, upon the ground that it is a proper exercise of the power of the court to see that the police regulations given by the statute over highways are enforced.   See authorities cited by Judge Eldredge.

The writ is denied.

GRANT, MONTGOMERY, and HOOKER, JJ., concurred. LONG, C. J., did not sit.