115  465
125  373

TOWNSHIP OF ERIN *v.* DETROIT & ERIN PLANK-ROAD CO.

1. CORPORATIONS—CONSOLIDATION—AMENDMENT OF CHARTER.

A special charter granted to a corporation in 1848 reserved to the legislature the right, after 30 years, to amend, alter, or repeal the same. A charter granted in 1850 to another corporation contained like terms. In 1857, by legislative authority, the interests of the two corporations came under one management, under the name and charter of the one first incorporated. *Held*, to amount either to the formation of a new corporation under the present Constitution (1850), reserving generally the right to amend, alter, or repeal corporate charters, or to a sale to the earlier corporation of the property and franchises of the later one, in which case the 30-year limitation would date from 1848,—either theory supporting the enactment of amendatory legislation in 1879.

2. SAME—PLANK-ROAD COMPANIES—PERMISSIVE STATUTE—REVOCATION.

A plank-road company, which is authorized by an act passed after its creation to substitute gravel for plank on the whole or any portion of its road, does not, by substituting unscreened gravel on part of the road, acquire an irrevocable privilege to use the same kind of gravel on other parts, after the passage of an act permitting the use of screened gravel only as a substitute for plank.

3. SAME—INJUNCTION—MODIFICATION.

Where, after the issuance of an injunction restraining a plank-road company from using upon its roadbed any material except that authorized by the existing statute, an act is passed permitting the use of other materials, the injunction should be modified accordingly.

4. SAME—MISUSER OF FRANCHISE—EQUITY JURISDICTION.

In the absence of an existing or threatened nuisance, equity has no jurisdiction to enjoin a misuser of corporate franchises, or to compel the performance of corporate duties. So *held* where a township and its highway commissioner sought to restrain a plank-road company from using upon its roadbed material other than that prescribed by its charter.

115 MICH.—30.

Appeal from Macomb; Eldredge, J.   Submitted October 14, 1897.   Decided January 4, 1898.

Bill by the township of Erin and August W. Nummer, highway commissioner of said township, to restrain the Detroit & Erin Plank-Road Company from using un- screened gravel upon its roadbed.   From a decree for complainants, defendant appeals.   Reversed.

*Canfield & Spier*, for complainants.

*Byron R. Erskine*, for defendant.

HOOKER, J.   In 1848 the Detroit & Erin Plank-Road Company was created by a special act of the legislature, which made the general plank-road act passed at the same session a part of its organic law.   This act was passed before the adoption of our present Constitution, and provided that the legislature might alter, amend, or repeal said act by a vote of two-thirds of each branch, but that such alteration, amendment, or repeal should not be made within 30 years after the passage of the act, except under circumstances mentioned, which apparently do not exist in this case.   In 1879 an amendment was made to the general law, permitting the use of screened gravel, in place of plank, upon the whole or any portion of any plank road; this being an amendment of section 31, which was added to said act in 1857, and which authorized the substitution of gravel for plank upon the whole or a portion of any such road.   The company substituted bank gravel for plank, upon a portion of its road, previous to 1879, and after that time sought to do the same with other portions, when this bill was filed to restrain the use of material other than as prescribed in the law passed in 1879.   A fuller statement of the facts will be found in the case of *Detroit & Erin Plank-Road Co.* v. *Macomb Circuit Judge*, 109 Mich. 371, where the jurisdiction was sustained upon demurrer.   The record shows that the material which the defendant sought to use upon said

road did not conform to the requirements of the act of 1879. Defendant claims that it did fulfill the requirements of the law of 1857. We do not discover that it is contended that the act of 1879 did not receive a vote of two-thirds of each branch of the legislature, and the defense appears to rest upon the following claims: *First*, that the 30 years provided by law had not expired when the act of 1879 was passed; *second*, that it was not such an amendment as might lawfully be made if the period had elapsed.

The first point mentioned is based upon the further fact that in 1850 another company, known as the Erin & Mt. Clemens Plank-Road Company, was chartered by an act exactly like that of the Detroit & Erin Plank-Road Company; and in the year 1857 the legislature passed an act under which the interests of the two roads were permitted to, and did, come under one management, under the name and charter of the Detroit & Erin Plank-Road Company. It is contended that this extended the period of 30 years to 1880, the time limited in the charter of the Erin & Mt. Clemens road. We think there is no force in this contention, for the defendant must accept one of the following alternatives: This was either a consolidation of two existing corporations, and the formation of a new one, which would be subject to the reserved powers required by the Constitution, as held in the recent case of *Smith* v. *Railway Co.*, 114 Mich. 460, or it was a sale of the Erin & Mt. Clemens franchises and property, under a law which subjected its property to the Detroit & Erin charter, as the act of 1857 expressly provides, in which case the 30 years expired in 1878. In either case the act of 1879 was valid, so far as the time of its passage is concerned. This disposes of the first contention.

The second is predicated upon the proposition that the company had certain rights as to the construction of its road, which it had accepted and acted upon, and that these could not be taken away; *i. e.*, that it had been given the right to gravel its road, and began to do so,

under the law of 1857, and that it could not be required to substitute a different, and more costly, and perhaps less suitable, material than that law authorized. Under its original charter this company could not lawfully use gravel in the construction of its road. It has never been required to do so. Were the act of 1879 the only act that had been passed authorizing it, we should have no doubt that the company could not lawfully use unscreened gravel, under the familiar principle that corporate privileges must be accepted with the conditions upon which they are offered. There were two other acts of similar nature,—the first being passed in 1855 (Act No. 102, Laws 1855), designating screened gravel; the second, passed in 1857 (Act No. 184, Laws 1857), using the term "gravel" without qualification. The company did not avail itself of the privilege offered by the law of 1855. It did act upon that of 1857, and substituted gravel for plank on several miles of its road, though this is the only acceptance of this law as an amendment of its charter. But the various acts of 1855, 1857, and 1879 were merely permissive. They gave the plank-road company the privilege of substituting gravel for plank upon the whole or any portion of its road; and, whatever may be the rule as to the portion of the road where the substitution was made before 1879, the State might withdraw this permission as to the others. In other words, we think the acceptance of the act of 1857, by the substitution of gravel on a portion of the road, did not give to the company an irrevocable privilege to do the same throughout the line. The act of 1879 had the effect of withdrawing the permission to use unscreened gravel, and imposed a further condition in case the company should attempt to make a change in other portions of the road, which it was not required, but was at liberty, to do. It follows that the company had not a right to substitute the gravel it sought to use at the time the suit was commenced, and whatever we may think of the question of the material used, and the unfitness of screened gravel, we could hardly go so far as to

nullify a statute upon a question of expediency. If screened gravel was not suitable, the company might have continued to use plank until it could have convinced the legislature of the necessity for a change in the law.

Although we should find the injunction, as originally made, was fully warranted by the law in force at the time, yet the question whether it should be made perpetual is not before us, because the circuit judge has decreed otherwise. Presumably, the complainants are satisfied with the modified injunction, and the defendant is not complaining that this is too narrow, but too broad. As stated, the law of 1897 has supplanted that of 1879, and specifies the constituents of the gravel to be used on the improvements. From the time of its taking effect, these companies could substitute gravel for plank only upon the conditions therein stated, and the court would have been justified in modifying its injunction so that the company should be at liberty to proceed with gravel of the quality prescribed by such law. The bill was filed to restrain the substitution of such material as the company was then using, as well as any material other than that specified by the act of 1879. By reason of the change in the law in 1897, the township has no longer a right to insist on the use of screened gravel, and the company has a right to gravel its road in conformity to the law of 1897.

The bill of complaint was sustained by the circuit court and this court, upon the ground that it was filed to prevent a threatened nuisance, dangerous to the public. An examination of the testimony not only shows conclusively that there was no justification for the claim that the projected substitution of gravel for plank upon said road would be dangerous, but it is also satisfactorily shown that the road would have been an excellent one, and a radical improvement upon that which it was to supplant, had the defendant been permitted to go on with its contemplated work.

Testimony was taken in relation to the railway constructed, with the consent of the township, within the limits of

the highway, and a claim was set up that it was constructed nearer to the plank portion of the highway than authorized, and it appears to be insisted that this should be considered; but not only is there no showing that the wagon road will be injured, or travel made dangerous, but it is apparent that a straight railroad could not have been built elsewhere without destroying valuable shade trees, which complainants seem to insist should be done, at the expense of the road. There seems little equity in this contention, and we are convinced that there was no occasion for complaint upon this score.

It appears that the nuisance theory of the bill is disposed of, because disproved; and therefore the bill cannot be sustained unless we are to say that the complainants may proceed by bill in equity to restrain a misuse of a. franchise, or to compel the performance of corporate duties. There is abundant authority for saying that there are adequate legal remedies for this, if the State is disposed to complain. Counsel for the complainants say that this question was decided in their favor upon the former hearing; but we do not so understand that case, which was expressly limited to statutory matters. See Act No. 103, Pub. Acts 1895. The authorities cited by counsel for the defendant sustain the proposition that equity has not jurisdiction to enjoin misuser where there is no nuisance. In *Shackley* v. *Railroad Co.*, 98 Mass. 94, the court say:

"It is clear that any suit to compel the performance of a corporate duty, in which the petitioners show no interest different from that of the whole public, should be brought in the name of the attorney general, and cannot be maintained in the name of these petitioners."

This case was an attempt to compel a railroad company to run the number of trains required by statute.

In *People* v. *Railroad Co.*, 24 N. Y. 261 (82 Am. Dec. 295), it was held that a railroad company incurred a forfeiture of its franchise by abandoning the operation of its road, but that it could not be subjected to a suit in equity

to compel performance of its duties, even by the attorney general.

*Moore* v. *Railroad Co.*, 108 N. Y. 103, was a suit in equity to enjoin the change of location of a station. The court said that

"There would be great difficulty in maintaining an action to compel the performance of this obligation, even if the public interests required its observance.   *   *   * But it is, we think, a conclusive *answer, in this case, to the remedy by injunction*, that no public injury will result from the proposed action of the defendant. The threatened violation of a mere naked legal right, unaccompanied by special circumstances, is not a ground for injunction, when, as in this case, *legal remedies are adequate to redress* any resulting injury."

See, also, *Attorney General* v. *Insurance Co.*, 2 Johns. Ch. 376, where it was said:

"It appears not to admit of doubt, nor do I understand it to be disputed, that if the defendants, as a corporation, have assumed powers not within their charter, the people of this State, by their attorney general, have a complete and adequate remedy at law, either by the common-law writ of *quo warranto*, or by an information in the nature of such writ."

An examination of the cases cited by counsel for the complainants upon this point will show that they involve the question of nuisance, or rest upon statutes: *Inhabitants of Springfield* v. *Railroad Co.*, 4 Cush. 63; *Easton, etc., R. Co.* v. *Inhabitants of Greenwich Tp.*, 25 N. J. Eq. 565; *Town of Burlington* v. *Schwarzman*, 52 Conn. 181; *Craig* v. *People*, 47 Ill. 487. If, as contended, these complainants may take upon themselves the duties of the attorney general, and may proceed, by slow process of chancery proceedings, to enforce a rigid observance by corporations of all statutory duties, it will subject corporations and the public to the danger of much inconvenience. Railroad companies may be enjoined from operating their roads until the tracks are made to conform to the statutory regulations regarding ties, rails,

ballast, cattle-guards, lights, signs at crossings, fences, and other particulars too numerous to mention. Trains might be stopped if the engine be not equipped with the statutory bell, if an officer could be found who would allow the writ. It is sufficient inconvenience where, as in this case, an injunction may issue upon a bill alleging a nuisance, and all work be stopped until the merits can be heard. This company was prevented for a year from making desirable public improvements on a road confessedly bad, and meantime the public was subjected to the risk of traveling upon a poor highway, while the defendant was compelled to assume the hazard of suits for accidents, or the unnecessary expense of temporary repairs, which it sought to avoid. It may be said that we should make a decree requiring the defendant to use material conforming to the act of 1897; but we are not able to say from the evidence that the gravel proposed to be used does not conform to such act, and we would not be justified in ordering an injunction on suspicion, even if the equity jurisdiction attached, which we think it does not.

The decree of the circuit judge must be reversed, and the bill dismissed, with costs of both courts. Ordered accordingly.

The other Justices concurred.