PEOPLE, *ex rel.* ESPER, *v.* DETROIT & SALINE PLANK-ROAD CO.

1. PLEADING—PLEA PUIS DARREIN CONTINUANCE—PRACTICE.

Circuit Court Rule No. 9 provides that, when matter arises after the joining of issue in a suit at law which defendant desires to rely on as a defense, he may give notice thereof as a special defense under the plea of the general issue, and such notice shall not be deemed a waiver of other defenses. After issue had been joined in *quo warranto* proceedings against respondent plank-road company, an agreement was entered into whereby, if respondent should put its road in a reasona-

bly safe condition by a certain time, the proceedings should be dismissed; otherwise, to be tried on the issues. On the hearing, respondent interposed a plea *puis darrein continuance,* setting up performance of the agreement, which was denied *Held,* that it was error to treat the plea as having the effect of such plea at common law, and effecting a waiver of other defenses, but that it stood as a notice under the former pleadings, in accordance with the rule.

2. SAME—TRIAL—OPENING AND CLOSING.

Where, after issue joined, defendant interposed a plea *puis darrein continuance,* that plaintiff had agreed not to prosecute the action if defendant should perform a certain agreement, and that defendant did perform, the interposition of such plea did not give defendant the right to open and close the case.

3. WITNESSES—QUESTIONS OF FACT—CONCLUSIONS.

A witness should not be permitted to express an opinion as to whether a roadbed was reasonably safe and fit for travel, but he should merely give the facts, and leave the deductions to the jury.

4. APPEAL—CONDUCT OF COUNSEL—CORPORATIONS.

Where, in an action against a corporation, the attitude of plaintiff's counsel, as disclosed at the trial and in the briefs submitted on appeal, would convey an impression that he deemed corporations when in court, their witnesses and their attorneys, to be entitled to less consideration than individual litigants and their representatives, the court, in reversing the case on other grounds, expressed their disapproval of such conduct.

5. PLANK ROADS—MAINTENANCE—CHANGE IN LAW—INSTRUCTIONS.

On an issue as to whether respondent plank-road company had placed its road in a reasonably safe condition, it was error to instruct that the jury should find for relator unless they found that the road was covered with a bed of gravel 9 feet wide and 7 inches deep, and composed of 65 per cent. of pebbles, and not more than 35 per cent. of sand, loam, and bonding material, as required by Act No. 231, Pub. Acts 1897, since respondent, having changed part of its road from plank to gravel prior to 1897, discharged its duty if it graveled such portion of the road with the quality of gravel required by the law at the time the change was made.

Error to Wayne; Donovan, J. Submitted November 15, 1900. Decided December 4, 1900.

*Quo warranto* by the people of the State of Michigan, on the relation of Frank H. Esper, against the Detroit & Saline Plank-Road Company, to forfeit respondent's charter. From a judgment for relator, respondent brings error. Reversed.

*Corliss, Andrus & Leete* (*H. H. Hatch*, of counsel), for appellant.

*James H. Pound* (*Thomas Mulvihill*, of counsel), for appellee.

MOORE, J. This is a proceeding in *quo warranto* brought for the purpose of forfeiting the charter belonging to the respondent company. From a judgment in favor of the relator, the case is brought here by writ of error. After the necessary pleadings had been filed to make an issue, an agreement was made between Esper, the relator, and the respondent. The respondent therein agreed to proceed with all due diligence and put the road "in a reasonably safe and fit condition for public travel, as required by the charter of said second party, and complete the same on or before October 1, 1898." If respondent made default, then relator "shall proceed with said suit   *   *   *   as though this agreement had not been made." If the respondent kept and performed the agreement, then the suit was to be discontinued. The respondent claimed that it performed this agreement. The relator claimed that it did not do so, and brought the case on for a hearing. The respondent then interposed a plea *puis darrein continuance*, setting up the performance of this agreement as a defense. The question then arose as to the effect of this plea. The respondent claimed the right, in case it failed to establish the defense set up in the plea *puis darrein continuance*, to litigate the case upon the issue as it existed when this plea was interposed. The court ruled that the only issue which could be tried was the truth of the defense set up in the plea *puis darrein continuance*. When this ruling was made,

counsel for respondent claimed the right to open and close the case, which right was given them by the court. The ruling of the court in relation to the effect of the plea is assigned as error.

The occasion to interpose pleas of this nature does not often arise, and, with no opportunity to investigate, it is perhaps not surprising that a busy *nisi prius* judge should make an error in deciding the effect of such a plea. The question, however, is now controlled by a rule of court, which has received a construction in this court, and is now put beyond the realm of doubt. In *Burt* v. *Wayne Circuit Judges*, 90 Mich. 520 (51 N. W. 482), a plea *puis darrein continuance* was interposed subsequent to placing the cause at issue. No replication was filed to this plea, and the default of plaintiff was taken, and judgment rendered in favor of defendant. The court, in disposing of the case, said:

"Under the practice at the common law, when a plea *puis darrein continuance* was filed it had the effect to eliminate all other defenses, as by that proceeding the defendant abandoned his former plea, and placed the issue of the suit entirely on the new plea. It therefore became the duty of the plaintiff to reply to such plea, and upon failure to do so his default would be taken."

The rule (now Cir. Ct. Rule No. 9) is quoted at length, and the court adds:

"Under this rule, which was adopted prior to the bringing of this suit and the filing of the plea, the plea stands simply as a notice under the general issue, and required no reply. The court was therefore in error in treating it as a plea requiring a replication, and in entering default absolute for want of reply."

The court set aside the default which had been entered, and directed that the case stand for trial upon the declaration, the plea of the general issue, and the notice contained in the plea.

The plea interposed in this case should have been treated as a notice under the rule; and, if respond-

ent failed to establish the defense set up in this plea, it was not precluded from litigating any defense it might properly interpose under the issue as it existed when this plea was filed. Nor did the interposition of this plea give the respondent the right to open and close the case.

It is claimed that the court erred in allowing witnesses to state conclusions, instead of stating facts, when describing the roadbed. Some of them were allowed to give their opinion as to whether the roadbed was reasonably safe and fit for travel. This was improper, under the repeated rulings of this court. In *Smead* v. *Railway Co.*, 58 Mich. 200 (24 N. W. 761), it was said:

"The following question was put to the plaintiff and several of his witnesses, viz.: 'In your opinion, was the cattle-guard sufficient to prevent animals from getting on the right of way under circumstances ordinarily arising at those places?' This question and the one following it, of a like nature, were permitted to be answered by the plaintiff and his witnesses, against the objection of defendant's counsel. This, we think, was error. The question called for answers giving merely the opinions of the witnesses, and established no facts. Really, the facts stated by some of these witnesses, when given, tended strongly to contradict the opinion. It is quite elementary that a witness can only give his opinion in exceptional cases, and then only when his knowledge is such as to qualify him, to some extent, as an expert. I think the rule is well stated in Best, Ev., where he says: 'This rule is necessary to prevent the other rules of evidence being practically nullified. * * * If the opinions thus offered are founded on no evidence, or on illegal evidence, they ought not to be listened to; if founded on legal evidence, that evidence ought to be laid before the jury.' 2 Best, Ev. §§ 511, 517, and notes; *Joyce* v. *Insurance Co.*, 45 Me. 168 (71 Am. Dec. 536); *Ames* v. *Snider*, 69 Ill. 376; *Whitmore* v. *Bowman*, 4 G. Greene, 148; *Veerhusen* v. *Railway Co.*, 53 Wis. 689 (11 N. W. 433). The testimony was incompetent."

See *Harris* v. *Township of Clinton*, 64 Mich. 447 (31 N. W. 425, 8 Am. St. Rep. 842); *Girard* v. *City of Kalamazoo*, 92 Mich. 610 (52 N. W. 1021); *Atherton* v.

*Village of Bancroft*, 114 Mich. 241 (72 N. W. 208); *Ryerson* v. *Inhabitants of Abington*, 102 Mass. 531.

The witnesses should have stated fully the facts as to the condition of the road, and it should have been left to the jury to draw the conclusions from the facts.

Complaint is made as to the conduct of counsel, in the course of the trial, in reference to the respondent, and his examination of witnesses called by the respondent. The attitude of counsel, not only in the trial court, but in the language used [in the brief filed in this court, would give one the impression that he thought corporations, witnesses called by corporations, and lawyers employed by them had no rights which jurors and courts ought to respect. He refers in a sneering way to the respondent as a corporation, to the witnesses as corporation witnesses, and to the lawyers as corporation lawyers. It is true, the respondent is a corporation, and that it produced witnesses to give its version of the differences which had arisen between it and the relator. It also employed lawyers to defend its interest in the courts. It had a right to do all these things. Its existence as a corporation is authorized by law. It had a right to do business in the manner authorized by law. It may sue and be sued. When sued, it may defend against the suit brought, and may employ counsel and produce witnesses to testify in the case, without its being made an occasion for adverse criticism. A corporation, when in court, has no more rights than an individual, but it has the same rights; and the case should be tried with a view of disposing of the legitimate issues involved in the case, as the right of the controversy appears, instead of trying the case in such a way as to constantly appeal to the prejudices of the jurors. When witnesses come into court, it is usually at the command of the court, expressed in its subpoena. Nearly all of them come unwillingly; and, while counsel should have such right of examination and cross-examination as will elicit the truth, it ought never to be forgotten by them that witnesses also have the right to be treated with

courtesy, and it is not presumed that they are untruthful because they are called by the opposite party. As this case is to be reversed upon other grounds, we are not called upon to decide whether we would reverse it upon this branch of the case or not, but will content ourselves with expressing our disapproval of the things we have mentioned.

Error is assigned upon many portions of the charge of the trial judge,—especially upon the following language:

"If the jury do not find as a fact that the road is covered with a bed of gravel 9 feet wide and 7 inches deep, and 65 per cent. of pebbles, and not to exceed 35 per cent. of sand and loam and bonding material,—I will say, of sufficient depth to furnish a hard road, convenient for travel,—then you will find a verdict for the relator."

Error is also assigned on his submission of the following question to the jury:

"Do you, the jury, find the Detroit & Saline Plank-Road Company has constructed upon Michigan avenue, so called, from the westerly city limits of Detroit to Sheldon's Corners, a roadbed of gravel, or stone so broken as to serve the purpose of gravel, 9 feet in width and 7 inches in depth, of gravel containing 65 per cent. of pebbles, and not more than 35 per cent. of sand, loam, or bonding material, and was such road, by October 15, 1898, composed of the foregoing material, of such depth and quality as to make at all times a good, firm, hard road?"

Nearly all of the errors in the charge grew out of the error in holding that the only issue to be tried was the one raised by the plea of *puis darrein continuance.* Aside from those errors, the charge, in the main, was a correct exposition of the law; but we think it possible that the jury may have been misled by that portion of the charge quoted above, and by the special question submitted to them. The respondent corporation has been in existence nearly or quite a half century. A portion of its roadbed is covered with planks. Other portions were changed from planks to a gravel road prior to 1897. If the portion which is covered by planks continues to meet the require-

ments of the statute in relation to roads covered with planks, the respondent has discharged its duty in relation to that portion of the road. So, too, as to that portion of the road which was changed from planks to gravel prior to 1897; if the company has continued to gravel that portion of its road in the manner and with the quality of gravel required by law at the time the change was made, it has discharged its duty, even though the gravel did not consist of 65 per cent. of pebbles, and 35 per cent. of sand, loam, and bonding material. While the question was not directly passed upon in *Township of Erin* v. *Detroit & Erin Plank-Road Co.*, 115 Mich. 465 (73 N. W. 556), we think the reasoning employed in that case, applied to the facts in this case, logically results in the conclusion above stated.

The other assignments of error relate to matters not likely to occur again, and we deem it unnecessary to discuss them.

Judgment is reversed, and a new trial ordered.

The other Justices concurred.