PEOPLE, *ex rel.* ESPER, *v.* DETROIT & SALINE PLANK-ROAD CO.

1. PLANK-ROAD COMPANIES—QUO WARRANTO—EVIDENCE—CONDITION OF ROAD.

In a proceeding by *quo warranto* to forfeit the charter of a plank-road company for its failure to maintain its road in a reasonable condition, specific instances of trouble experienced by travelers are admissible as tending to show the bad condition of the road.

2. SAME—REQUESTS TO CHARGE—INSTRUCTIONS.

A request to charge that if any two consecutive miles of road was fairly good road, sixteen feet wide, graveled to the depth required by statute, and nine feet wide, and so constructed that vehicles could conveniently pass each other, then the verdict must be for respondent, is sufficiently covered by an instruction that plaintiff cannot recover unless the jury find that nowhere was there two consecutive miles as required by the charter, and that the road was dangerous and unsafe, and not so constructed as to permit carriages easily to pass each other thereon for any two consecutive miles.

3. SAME.

It being the duty of the company, under its charter, to keep its road in a reasonable condition for public travel in all seasons of the year, a request to charge that the jury cannot render a verdict against the company unless they find that the road was dangerous at all seasons is properly denied.

4. SAME—PLEADINGS—SURPLUSAGE.

In such proceeding, relator is bound only to prove that the road did not comply with the requirements of the charter, and extravagant averments in the replication may be treated as surplusage.

5. SAME—INSTRUCTIONS—WITNESSES—PREJUDICE.

The use by the court, in his charge to the jury, of the term "farmers," to indicate the witnesses for relator, and "plank-road men," the witnesses for respondent, was unfortunate, as tending to prejudice the jury, but, upon an examination of the whole record, is not considered such damaging error as to justify a reversal.

6. SAME.

> A statement by the court in his instructions, with reference to the condition of the road, that "It has been urged that frost might heave the earth; * * * but frost would not heave it to match the statements of the farmers; it was more than frost,"—was unjustifiable, but in view of the entire charge, and the testimony as to the condition of the road at times when frost could not have affected it, does not constitute reversible error.

Error to Wayne; Donovan, J. Submitted April 24, 1902. (Docket No. 134.) Decided June 3, 1902.

*Quo warranto* by the people of the State of Michigan, on the relation of Frank H. Esper, against the Detroit & Saline Plank-Road Company, to forfeit respondent's charter. From a judgment for relator, respondent brings error. Affirmed.

*Corliss, Andrus & Leete* (*H. H. Hatch*, of counsel), for appellant.

*James H. Pound* and *Thomas Mulvihill*, for appellee.

GRANT, J. The issues in this case are sufficiently stated in 125 Mich. 366 (84 N. W. 290), where the case was reversed, and new trial ordered. A new trial has been had, resulting in a verdict for the relator. Several grounds are, alleged for which reversal is again asked.

1. Error is alleged in that the court permitted specific instances of trouble experienced by travelers upon the road. The following is an instance: The witness Bird was asked:

" *Q.* Tell the jury what, if anything, you have known in the way of difficulties in traveling that road. Did you ever observe anybody being stuck, or anything of that kind, on it?"

The objection was that it called for specific instances of trouble; that it led to side issues, and involved an inquiry into the care of the driver of the team, and his load. The answer was as follows:

"*A.* Four years ago I had quite a lot of hay to draw to the city, and during the month of March I knew that the road was so bad I did not try it. I commenced to draw hay in April, after the country road got all right; and I found then holes in the gravel road were so bad that I did not get stuck myself, but two men in succession. I drew their men out who were stuck; could not draw their loads."

He further testified:

"I remember coming to Detroit in a horse and buggy in 1890, in April, and the horse could scarcely get through in places with the buggy, my wife, and I. * * * I have seen other people in holes clear up to the hub west of Inkster in 1890, many times. I saw a man stalled there with a load of lumber not quite a mile and a half west of Inkster."

We think testimony of this character was competent. It involved the condition of the road, and the testimony given in response to such questions tended directly to show its bad condition.

2. Error is alleged in the refusal of the court to give the following requests:

"That if any two consecutive miles of the defendant's road was on or about October 1, 1898, a fairly good road, sixteen feet wide, having thereon gravel to the depth required by statute applicable to this defendant, and nine feet wide, so constructed that vehicles could conveniently pass each other, that then the verdict must be in favor of the defendant. * * *

"That the jury cannot render a verdict in favor of the plaintiff and against the defendant unless they find that the road was worthless, worn out, dangerous, and highly inconvenient at all seasons of the year, from one end to the other."

The court instructed the jury as follows:

"Under the issue of this case, the plaintiff cannot recover unless the jury find from the evidence that nowhere along this road were there two consecutive miles of said road as was required by the charter. * * * By the terms of this contract, if the defendant has not complied with the provisions, it is incumbent upon the plaintiff to show, by a

preponderance of evidence, that the matters and. things complained of in the original pleadings, viz., that the 1st day of January, 1890, from that down to the commencement of the action, the defendant's toll road was broken, worn, out, and destroyed, and the planks displaced, rotten, and warped, and the roadbed full of holes, gullies, ruts, excavations, through, over, and upon the entire length; that the defendant's road was dangerous, and continued to be dangerous, inconvenient, and unsafe; and that it was not so constructed as to permit carriages and vehicles conveniently and easily to pass each other thereon for any two consecutive miles."

The contract referred to in'this instruction was the contract involved in the plea *puis darrein continuance.* We think these instructions sufficiently cover the first above request.

The second request was faulty, in that it required the jury to find that the road was dangerous, etc., at all seasons of the year. It would not be sufficient to justify a verdict for the respondent if the jury had found that it was passable for a small portion of the year, but unfit for travel for the rest.of the year: The charter of the defendant required it to keep its road in a reasonable condition for public travel during all seasons of the year, taking into account the elements and the weather. The question was, Had the respondent complied with its charter, in keeping its road in the proper condition ? This was the issue raised by the pleadings. The replication may have contained certain statements in regard to its condition which relator could not sustain, but, if relator proved that its condition during the time covered by the replication did not comply with the requirements of the charter, the extravagant averments in the plea may be treated as surplusage. The replication directly put in issue the condition of the road. If he proved that that condition was such as was described in the instruction given, it was a sufficient basis for the verdict.

3. It is also urged that the judge committed error in the use of the following language to the jury :

"How are you convinced on the question of the condition of the road? *First,* as to whether they repaired it, and lived up to their contract; and, if they did, that ends it; and, if not, how have they kept this road from 1890 to 1897? Esper described the condition. I am not going to give you his testimony. The road's witnesses described the condition of the road the other way,—what they had put on. The farmers, in large numbers, described the condition,—the sand, ruts, and the wagon running to the hubs; and others the floating planks and the electric road, and the condition; and then some showed large holes, or plank out, or places where they were taken out, and then the condition of the road after they are put back again. * * * You are to say to yourselves: How am I convinced on this matter? Is it as the road claims, or is it as the farmers claim? If as the road claims, they are not guilty; if as the farmers claim, they are guilty. * * *"

And again:

"The plank men have described the condition, and, of their men, Mr. Griffin, the builder of the culverts, and Knapp on the quality of the gravel, and Merrill on the work done; and it has been urged that frost might heave the earth, and it does; but frost would not heave it to match the statements of the farmers. It was more than frost. It was longer than frost, to match the statement of the farmer witnesses."

The relator introduced 41 witnesses as to the condition of the road, the most of whom were farmers who used the road. Some of the jurors were farmers. The respondent introduced 10 witnesses, some of whom were farmers, and others those who had made the repairs upon the road. It is urged that this language naturally prejudiced the jury against the respondent corporation, and raised an issue of the "farmers" against the "plank-road men." The language was unfortunate, and it was probably thoughtlessly used, at the close of a long and troublesome trial. Considering the entire record, we do not think the use of these terms as descriptive of the witnesses was of such damaging error as to justify a reversal of the case. The language in regard to the frost was such as the court should not have used. It is true that the witnesses for the relator described

the condition of the road at times when the frost could not have been responsible for the condition detailed by them, and probably this is all the language meant. While its use is unjustifiable, we are of the opinion that it was not such that we can say, in view of the entire instruction of the court and of the evidence in the case, it constitutes reversible error.

The judgment of ouster is affirmed.

HOOKER, C. J., MOORE and MONTGOMERY, JJ., concurred. LONG, J., did not sit.