# JANUARY TERM, 1910.*

PERSON v. J. H. WORDEN LUMBER & SHINGLE CO.

TRIAL—ARGUMENT—CONDUCT OF ATTORNEY.

In an action for the purchase price of lumber sold to defend-
ants, argument of plaintiff's attorney that "it is one of that
class of cases that arise in this country every day in the
year, where a lumber corporation refuses and delays to pay
its jobber and tries to make him settle on their own basis
and according to their own interpretation of the contract,"
while improper, is not prejudicial error where counsel was
checked by the court, admitted his error and tried subse-
quently to correct it, and the court instructed the jury to
disregard anything which was said as to the character or
wealth of the parties.

Error to Chippewa; Steere, J. Submitted January 20,
1910. (Docket No. 101.) Decided February 3, 1910.

Assumpsit by Eric G. Person against the J. H. Wor-
den Lumber & Shingle Company for goods sold and de-
livered. A judgment for plaintiff is reviewed by defend-
ant on writ of error. Affirmed.

*Warner & Sullivan,* for appellant.

*Herbert L. Parsille,* for appellee.

STONE, J. This is an action of assumpsit brought in
the Chippewa circuit court to recover a balance claimed
to be due the plaintiff for the sale and delivery of a quan-
tity of pulpwood, poles, and logs in the fall and winter of
1907. The declaration was on the common counts, and
the plea was the general issue with notice of set-off.

---

* Continued from Vol. 159.

Upon the trial plaintiff claimed that he had delivered material to the amount of $5,364.01. The defendant admitted $5,037.97 of the claim. The plaintiff admitted a set-off of $3,347.60, and the defendant claimed as set-off $3,469.91. The controversy at the trial hinged upon two propositions: *First*. Whether or not defendant agreed to allow ten per cent. discount on plaintiff's purchases at the store; *second*, whether or not the defendant authorized plaintiff to ship a percentage of balsam pulpwood, and take plaintiff's scale. We shall not review the evidence in the case. It is sufficient to say that there was a sharp conflict in the evidence upon the propositions stated, the plaintiff claiming that the defendant agreed to pay him $7 per cord for pulpwood and take the plaintiff's scale; while the defendant insisted that the plaintiff agreed to accept the same scale in settlement for the pulpwood that defendant received from the companies purchasing the material.

The plaintiff recovered a verdict for $2,010.32 damages, and the jury answered two special questions submitted to them, as follows:

"*First*. Did the defendant agree to give Person $7 per cord for pulpwood, and take his, Person's, scale?

"*Answer*. Yes; less eight cords at $7 a cord, $56.

"*Second*. Did Person agree to accept the same scale, in settlement for his pulpwood, that the J. H. Worden Lumber & Shingle Company received from the companies purchasing the wood?

"*Answer*. No."

The defendant brings error. While defendant's attorneys claim that the verdict was against the weight of the evidence, yet they made no motion for a new trial, nor do they assign error upon that ground, but they urge it in support of their position that the verdict was the result of the misconduct of plaintiff's attorney in his argument before the jury, and claim that the verdict cannot be accounted for upon any other ground. The only assignments of error urged at the hearing were the last three,

all relating to the conduct of plaintiff's attorney in the argument of the case. On the argument by plaintiff's attorney he said:

" I say that, under this contract, this man had a right to his pay when his contract was completed.

"*Mr. Sullivan:* I except, and say that it is not proper argument to this jury to comment on the time this matter has been in court. The continuances were granted for one cause or another, and it is prejudicial argument.

"*The Court:* Why the intervening time is proper evidence, as bearing upon the matter of interest.

"*Mr. Sullivan:* Yes; but he is not arguing on that. He is arguing on the good faith and fairness of the defendant in keeping the plaintiff out of his money for all this length of time.

"*Plaintiff's Attorney:* I think the argument is fair, and right in line with the contract, and it is leading up to my claim that we make, if the court please, in regard to the computation of interest upon this account, which we claim in this case.

"*Defendant's Attorney:* There is no question about your right to interest, certainly."

Upon the foregoing, error is assigned. On the closing argument for the plaintiff, Mr. Hudson, one of his attorneys, said:

" It is one of that class of cases that arise in this country every day in the year, where a lumber corporation refuses and delays to pay its jobber, and tries to make him settle on their own basis and according to their own interpretation of the contract.

"*Mr. Sullivan:* Now, I take exception to the remark of counsel.

"*The Court:* You have no right, Mr. Hudson, to comment on any other case than this.

"*Mr. Hudson:* I concede that, your honor, and ask the jury not to consider what I said about any other corporation."

Upon the last above, the eighth assignment is based. On the closing of his argument Mr. Hudson said:

" We are not asking for anything because we are hard up, and poor, or that we are a single operator as against a large corporation.

"*Mr. Sullivan:* Take that down, Mr. Stenographer.

"*Mr. Hudson:* All we are asking for is fair treatment, and you may take that down, Mr. Stenographer.

"*Mr. Sullivan:* I except to the rehearsal and language of counsel.

"*The Court:* In what particular?

"*Mr. Sullivan:* In saying that the plaintiff is a poor man. I claim there is no testimony as to that—calling the attention of the jury to it both at this time and at the commencement of his address to the jury."

Error is assigned upon the last quotation, by the ninth assignment. In the charge to the jury the circuit judge, among other things, said:

"It so happens that, in the heat of litigation, there is a tendency often on both sides to ring in prejudicial matter, to get testimony before the jury of things which might detract from either one side or the other, which, in truth, have nothing to do with the question involved in the particular suit being tried. You have heard some objections and some exceptions and appeals to the court in that connection. It is a fact that all lawsuits mean delay. They mean to both parties annoyance, suspense and expense and uncertainty. In most lawsuits, one side or the other is in some particulars in the wrong, and also in the right. And, when cases come into court, where parties have been unable to adjust their differences, and appeal to the court, as they are authorized to do, the matters come up before the officials of the court to be adjusted and adjudicated, and it is particularly incumbent upon all of us who have the responsibility, to entertain no unkind feeling toward either side. They have a right to be in the court and litigate their cases, and their motives for bringing their cases and their financial circumstances are matters entirely foreign to the issue. It is absolutely immaterial what the financial circumstances of these parties may be. We have nothing to do with, and it has no bearing on, the case, whether or not one party to the suit is an individual and another a corporation, and one is better situated financially than the other. So far as we should know in this case, they come here on an equal footing, with equal rights, with matters in dispute which we, as officers of the court, are to take up and decide. And so, anything which has been said along that line ought not to be considered by the jury—ought to be entirely disregarded; and your atten-

tion should be directed to try and sift from the testimony what the facts in this case are, and to find out what the right between these parties is, irrespective of who they may be."

The appellant's attorneys claim that the conduct of plaintiff's attorney, and the action of the court herein set forth, constitute reversible error, and they cite the following cases in support of their position: *Smith* v. *Jennings*, 121 Mich. 393 (80 N. W. 236); *People* v. *Plank-Road Co.*, 125 Mich. 366 (84 N. W. 290); *Johnson* v. *Railway Co.*, 135 Mich. 353 (97 N. W. 760); *Thompson* v. *Railway Co.*, 91 Mich. 261 (51 N. W. 995); *Hillman* v. *Detroit United Railway*, 137 Mich. 184 (100 N. W. 399); *Whipple* v. *Railroad Co.*, 143 Mich. 41 (106 N. W. 690); *Detroit Nat. Bank* v. *Union Trust Co.*, 145 Mich. 656 (108 N. W. 1092, 116 Am. St. Rep. 319); *Dolph* v. *Railway Co.*, 149 Mich. 278 (112 N. W. 981). Counsel for the defendant has well said that the various decisions of this, and other courts, as to what constitutes reversible error in the conduct and argument of counsel, practically leaves each case to be decided upon its own facts. An examination of the cases relied upon by defendant's counsel will show that they are extreme cases, and evidence gross misconduct of counsel, and manifest a studied purpose to induce the jury to deal with the corporations, in most cases, differently than they would with individual defendants.

In this case the language of counsel was not as extreme or as extravagant as in the cases cited by defendant; and the charge of the court called attention to the matter and cautioned the jury upon the subject, and instructed them that it was absolutely immaterial what the financial circumstances of the parties were, and that they had nothing to do with, and it had no bearing in, the case whether or not one party to the suit was an individual and another a corporation. There is no question that the language of plaintiff's attorney in the sentence beginning with the words: "It is one of that class of cases that arise in this

country every day in the year, where a lumber corporation," etc., was improper.  But he was, upon exception by defendant's attorney, immediately checked by the court, and afterwards he evidently attempted to correct the error; and defendant's attorney in his closing words seems to give a strained and forced meaning to the language of plaintiff's attorney.  It is not the practice to reverse every case where there has been a departure from the strict rule, but much depends upon the particular circumstances. *Dikeman* v. *Arnold,* 83 Mich. 218 (47 N. W. 113).

In the following cases the effect of improper argument was held cured by the charge of the court: *People* v. *Hess,* 85 Mich. 128 (48 N. W. 181); *People* v. *De Camp,* 146 Mich. 533 (109 N. W. 1047); *Davis* v. *City of Adrian,* 147 Mich. 307 (110 N. W. 1084); *Miller* v. *Insurance Co.,* 158 Mich. 402 (122 N. W. 1093); *Samberg* v. *K. O. T. M. M.,* 158 Mich. 568 (123 N. W. 25).  In *Davis* v. *City of Adrian, supra,* Justice MOORE said:

"Should the case be reversed because of the argument of counsel?  The objectionable part of the argument, and it was objectionable and should not have been made, was intended to have the jury draw a contrast between the financial situation of the parties.  The court at once told the jury in substance that the parties must be regarded as upon an equal footing.  Had counsel desired the jury to be further instructed as to the argument, the court doubtless would have done so upon request."

We are of opinion that there was evidence to warrant the jury in its verdict, that the case was properly tried, and that the circuit judge in his charge to the jury did all that could be done to cure the error complained of, and we do not think that the case is such that it calls for a reversal because of the remarks of the plaintiff's attorney.

The judgment will be affirmed.

MONTGOMERY, C. J., and OSTRANDER, HOOKER, and MOORE, JJ., concurred.