ROBERT THOMPSON v. THE TOLEDO, ANN ARBOR & NORTH MICHIGAN RAILWAY COMPANY.

*Negligence—Question for jury—Pleading—Evidence—Trial—Misconduct of counsel.*

1. The evidence is held sufficiently conflicting to require the submission of the question of plaintiff's contributory negligence to the jury.

2. Uniting immaterial charges of negligence with those that are material and necessary in a declaration will not preclude a recovery, it being the duty of the trial court to eliminate the immaterial charges from the consideration of the jury, and limit their consideration to the other acts alleged, which, if found to exist, constitute negligence.

3. Where, in a railroad negligence case, one of the acts of negligence alleged is permitting a building to remain near a crossing at the time of the accident, which allegation is not well founded, but the jury are not instructed to that effect, it is error to admit evidence of the removal of the building by the railroad company after the accident.

4. Counsel for plaintiff in a railroad negligence case, on the refusal of the court to permit certain cross-examination of one of the defendant's witnesses, remarked that the attorneys on the other side were afraid that the witness would tell. And it is held that the natural tendency of the language used was to increase in the minds of the jurors a prejudice which common experience shows is very apt to exist, and that trial courts should set aside verdicts where such means have been resorted to.

Error to Shiawassee. (Newton, J.) Argued March 4, 1892. Decided April 8, 1892.

Negligence case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Lyon & Hackleman* and *T. W. Whitney,* for appellant.

*Albert L. Chandler (George R. Gold* and *S. S. Miner,* of counsel), for plaintiff.

GRANT, J. Plaintiff, at about 5 o'clock in the morning of September 26, 1889, while attempting to walk across the defendant's road at a street crossing in Vernon, a village of 800 inhabitants, was struck by a passing engine, and injured. Defendant's road runs parallel with the Detroit, Grand Haven & Milwaukee Railway, and at the point where the accident happened they are about 15 rods apart.

Plaintiff was a young man, living about six miles from Vernon, and had come in with a party for the purpose of taking the 5 o'clock A. M. train over the Detroit, Grand Haven & Milwaukee Railway to attend the exposi-

tion in Detroit. The party left their teams at a stable, and went to the station. Finding no one there, they walked down Walnut street, to the first street north of the defendant's track. There the party stopped, while the plaintiff went to the house of the station agent. He did not find him at home, and as he came out on the steps he heard an engine whistle to the north and west, and, as he thought, half or three quarters of a mile away. Supposing this was the train he intended to take, he started on a run, and, finding that his party had gone, he continued to run, so as to overtake them, and reach the train; but he says he stopped running when about 60 or 70 feet from the track, and walked the rest of the way, until he was struck by the steps of the engine.

Verdict and judgment were for the plaintiff.

1. The declaration contains but one count, in which are set forth the following concurring acts of negligence:

"1. In not blowing its whistle at the crossing, as provided by law.

"2. In not ringing its bell, as provided by law.

"3. In running its engine in the village of Vernon at a furious rate of speed, viz., 60 miles an hour.

"4. In not keeping a watch on its engine, and a suitable person to warn persons at a public crossing of approaching trains and engines.

"5. In permitting a building to remain on said railroad grounds, near to and adjacent to said railroad grounds, which obstructed the vision and hearing of persons crossing the road from the north.

"6. In running its engine off schedule time, without giving warning to the public, and in not having a headlight on the engine.

"7. In not having a signal board placed at the crossing, with the words 'Railroad Crossing' painted thereon, as required by law."

The court, among other instructions, gave the following:

"A railroad track is in itself a notice and warning of danger, and it is the duty of a person approaching to look and listen; and if, in this case, the jury find that from darkness or fog the sense of seeing could not be rendered available, the obligation on plaintiff was stronger to listen, and ascertain, before attempting to cross, whether a train was approaching; and, should the jury find the plaintiff neglected to do this, but approached the track without making any effort to see and listen to ascertain whether a train was coming, he did it at his own risk, and such conduct is in itself negligence, and would prevent the plaintiff recovering, and this, too, whether the defendant gave proper signals, such as blowing a whistle and ringing the bell.

"If the jury find as a matter of fact that said plaintiff had it in mind and intended to cross the T. & A. track in order to get to the D. & M. depot, he cannot be said to have been injured by defendant's failure to put up a caution board. So, too, if you find it was too dark for the plaintiff to have read thereon the cautionary signal.

"The defendant, under the undisputed facts in this case, as a matter of law was under no obligation to station a flagman at said crossing.

"The failure to station a flagman and maintain a caution board, as alleged in the declaration, are not material circumstances in this case.    *    *    *    *    *    *

"The greater the danger from the situation and time of day or night at which the danger occurs or exists, the greater becomes the duty of every one crossing the railroad track to exercise a higher and greater degree of due care to protect himself from danger and injury."

These instructions correctly stated the law applicable to the case.

But it is insisted by the defendant that plaintiff was, under his own evidence, guilty of contributory negligence, and that the court should have directed a verdict against him. The testimony, as is usual in this class of cases, as to the ringing of the bell, the head-light, the whistles, and the speed of the train, was conflicting. Had it been daylight, plaintiff unquestionably would have been guilty

of contributory negligence. The testimony on his part was that it was dark and foggy; that he was looking and listening; that there was no head-light; no bell rung; and that the engine was running at a high rate of speed. The members of his party who had crossed the track testified that they were two or three rods from it, and that they did not hear the engine until it was very near the crossing. This was not a regular train, but only an engine and tender, which were on their way to Howell. It is true, the plaintiff testified that he was about eight feet from the center of the track when he first saw and heard the engine, and that it was then about 60 feet distant. He said: "When I first knew where it was I tried to get away from it, and I felt the draught, and didn't know any more then until the thing was all over with." But it must be remembered that under these circumstances the distance was a mere matter of judgment with him. If he saw the engine before it reached him, and he attempted to jump back, as he testified he did, it is evident that he was nearer the track than he stated, and that the engine was nearer to him. While it seems strange that he should not have heard the noise of the approaching engine, even if no bell were rung, yet, considering all the circumstances, I do not think the case so plain as would have justified the court in holding plaintiff guilty of contributory negligence. While it is true that several witnesses—some of them the plaintiff's—testify that the engine was seen at a sufficient distance from the crossing to enable one in the exercise of care to avoid it, yet I think there was sufficient conflict upon this point to submit it to the jury.

2. Defendant requested the court to instruct the jury that there were seven several acts of negligence alleged; that the allegation in the declaration was that these

seven acts combined caused the plaintiff's injury; that it was not alleged that any one of these acts produced the result; and that, therefore, he could not recover unless all of these acts concurred to produce the injury. We are cited to *Wormsdorf v. Railway Co.*, 75 Mich. 472, as supporting this contention. Whatever may be the effect of that decision, aside from its application to the peculiar facts in that case, we need not discuss. Four of the acts charged in the present case constituted no negligence on the part of the defendant, viz., the failure to keep a flagman, permitting a building to remain on the railroad grounds, running off schedule time, and the failure to erect a signal board. These were immaterial and "redundant charges." Such charges and their effect will be found discussed by this Court in *Thorsen v. Babcock*, 68 Mich. 526. Under the declaration and proofs in this case no duty was due to the plaintiff from the defendant so far as these four acts are concerned. It was the other acts charged in the declaration from which duty arose and negligence resulted, and which must have existed to entitle the plaintiff to recover.

I do not understand the authorities to hold that uniting such immaterial charges in a declaration with those that are material and necessary precludes a recovery. The trial court will eliminate such immaterial charges from the consideration of the jury, and limit their consideration to the other acts alleged, which, if they are found to exist, constitute negligence.

3. It was error to admit evidence that the building, which stood near the crossing at the time of this accident, had since been removed. To permit this building to remain there was one of the negligent acts alleged. While this was not negligence on the part of the defendant, the court·had not so instructed the jury, and it was

therefore before them. They might readily find that its subsequent removal showed negligence in keeping it there.

4. In cross-examining the engineer, counsel for plaint. iff asked this question: "When you went through Corunna, did you see any object here that morning?" This was objected to as immaterial, whereupon plaintiff's counsel stated: "I want to show that between Corunna and Owosso he came near running over a man, and did not see him." Exception was taken to this statement, whereupon the court said: "Strike it out, and the jury will not pay any attention to anything counsel stated."

Again, in cross-examining defendant's station agent, the following occurred:

"Q. I will ask you whether or not you know of an accident occurring at this place,—within eight feet of this place,—within a year previous, or whether or not you reported it. (Objected to as immaterial. Objection sustained.)

"Mr. Chandler: My idea is, this was a most extraordinary report he was making of it.

"Mr. Lyon: I want to except to statement of counsel.

"Mr. Chandler: I offer it to test the witness recollection.

"The Court: I can't allow it for that purpose. It is utterly immaterial.

"Mr. Chandler: My brothers on the other side are afraid he will tell."

The purpose of this language is evident. Its natural tendency is to increase in the minds of jurors a prejudice which common experience shows is very apt to exist. Such remarks are improper in any case, and particularly in cases of this character. We cannot say that the ruling of the judge cured the error, and prevented the effect of such statements upon the jury. This Court has frequently condemned such practice, and has reversed cases for remarks by counsel less harmful than these.

The object of trials in courts is to reach justice. It cannot be said to have been reached where such language is used. I think trial courts, of their own motion, should set aside verdicts where such means have been resorted to.

Judgment reversed, and a new trial ordered.

MORSE, C. J., LONG and MONTGOMERY, JJ., concurred with GRANT, J. McGRATH, J., concurred in the result.