IDA M. THAYER v. THE FLINT & PERE MARQUETTE
RAILROAD COMPANY.

*Railroad companies — Negligence — Pleading — Defective highway
crossing—Purchase of property and franchises of company.*

1. Immaterial acts of negligence, though alleged, need not be
   proved; citing *Thompson v. Railway Co.*, 91 Mich. 255.

2. A railroad company is guilty of negligence in maintaining the
   usual rate of speed when approaching a highway crossing,
   without observing the usual precautions and giving the
   required danger signals to warn the public of the approach
   of the train.

3. The obligation imposed upon a railroad company by How. Stat. §
   3323, to restore the highway to its former state, as near as may
   be, and to construct suitable crossings for the passage of
   teams, continues until properly discharged.

4. A railroad company which purchases the property and franchises
   of another company pursuant to Act No. 10, Laws of 1889,
   holds subject to all the duties and obligations prescribed by
   the general railroad laws of the State.

5. The performance of work by a township on the roadway of an
   approach to a railroad crossing, in an endeavor to make it
   passable, will not relieve the railroad company from its statu-
   tory obligation to construct suitable crossings for the passage
   of teams.

6. The right to use a public highway, even though in a dangerous
   condition, cannot be abridged by the neglect to repair it; citing
   *Maltby v. Railway Co.*, 52 Mich. 108.

7. The question of plaintiff's negligence in approaching defendant's
   road at a highway crossing is held to have been properly and
   fairly submitted to the jury, and a judgment in her favor is
   affirmed.

Error to Sanilac.    (Beach, J.)    Argued June 17, 1892.
Decided October 4, 1892.

Negligence case.    Defendant brings error.    Affirmed.
The facts are stated in the opinion.

*W. L. Webber*, for appellant.

*McGinley & Durning* (*S. W. Vance*, of counsel), for plaintiff.

McGRATH, J. Plaintiff's horse was frightened by three sharp whistles from a locomotive when within from 30 to 50 feet of defendant's tracks, on a narrow approach on a highway known as the "O'Hara Highway," and she was thrown out of her buggy down an embankment. The highway runs east and west, and crosses the tracks over a fill between two cuts, one about 20 rods south of the highway, and the other from 40 to 80 rods north. Both cuts are deep enough to hide an approaching train. The grade from the crossing north to the cut rises about 18 feet, and between the cuts the grade is raised from 3 to 6 feet above the adjoining lands. At the crossing, the railroad track is about 6 feet above the former grade of the highway. Plaintiff appears to have stopped twice, and looked and listened, and did not observe the train until within about 30 feet of the railroad tracks, whereupon she backed away from the tracks about the length of the buggy, and stopped. The train came from the north, and, when from 24 to 26 rods north of the highway, the engineer gave the three whistles, causing the horse to rear and plunge over the embankment. The railroad was originally constructed in 1880 by the Port Huron & Northwestern Railway Company. Defendant subsequently purchased the road, and was operating it at the time of plaintiff's injury, June 5, 1889.

The declaration consists of a single count, which contains the following allegations of negligence:

"And the plaintiff alleges that the defendant was negligent and careless in the following particulars, to wit:

"*First.* That the defendant did not, nor did its predecessor, restore the highway aforesaid, as near as it might be, to its former state or condition, but, on the contrary,

raised the same twenty feet, and, on the top or crest thereof, left only a narrow driveway, about five feet wide, not sufficient to enable a horse and buggy to turn without danger, and on both sides thereof constructed and maintained deep ditches, without guards of any kind, but sharp slopes from the top to the bottom, thereby making an attempt to drive over or turn upon said road extremely perilous and dangerous.  *  *  *

"And the plaintiff further alleges that, at the highway crossing about one mile north of said O'Hara highway, it became and was the duty of the defendant, in operating the special train aforesaid, to blow a whistle, but the defendant neglected so to do; and by reason of such neglect this plaintiff, who was driving on said O'Hara highway, and who would have heard such whistle, did not hear the same, and therefore had no warning that such special train was approaching until it came too near for her to avoid the injury aforesaid, she being unable to see the approaching of said train by reason of the care required, and the management of her horse, and a turn in said road that prevented such train being in sight, and because of the neglect of the defendant or its agents or servants to blow the whistle aforesaid, or to blow any whistle when approaching said crossing at the distance required by law.

"And the plaintiff alleges that the defendant was also negligent in the following particulars, to wit:

"1. In its failure to restore said O'Hara highway to its former condition, and to keep the same in repair.

"2. In constructing the approaches upon said O'Hara highway, the track was so high and so narrow that travel thereon was extremely dangerous.

"3. In the failure of the defendant to blow a whistle or ring a bell at the crossing north of the O'Hara highway.

"4. In the failure of the defendant to blow a whistle at least 40 rods before said O'Hara crossing was reached, or to ring the bell continuously until such crossing was passed.

"5. In the careless and negligent acts of the engineer or manager of the engine drawing said train, in blowing a shrill whistle 50 feet from said crossing, thereby frightening the plaintiff's horse, and causing the accident and injury aforesaid.

"6. In the fact that said train was being run at a speed of 40 miles an hour, in such a negligent and careless manner.  *  *  *

"7. In the neglect of the defendant or its predecessor to

put up or maintain guards on said road to save vehicles and animals from being overturned or thrown into the ditches.

" 8. In the construction of a deep ditch on each side of said highway.      *      *      *

" 9. In constructing the approaches by excavating deep ditches on each side of the road.      *      *      *

" 10. That the engineer, or person who managed the engine, operating the special train aforesaid on the day and at the time aforesaid, was incompetent and unskillful, and was careless and negligent in the conduct of his business and in the running of said train, by reason of want of experience and of general unfitness, by reason of which, in the conduct of such train, he neglected to properly run the same, and to give proper signals."

It is alleged as error that there were several distinct acts of negligence alleged, and that the court refused to instruct the jury that each and every allegation must be proven. Plaintiff relied upon the failure to properly construct the approach, the neglect of the engineer to blow the statutory whistle, and the negligent blowing of the whistle near the crossing, claiming that this combination of circumstances produced the injury, and the case went to the jury upon that theory. Plaintiff's proofs tended to establish all the allegations of negligence, except the last, and no testimony was offered in support of that charge. Proof of the unskillfulness of the engineer was not necessary to establish defendant's liability. Conceding that the engineer was skillful and competent, a case of negligence was made out, if the other allegations were established.

In *Wormsdorf v. Railway Co.*, 75 Mich. 472, relied upon by defendant's counsel, a collision occurred between two street-cars. The negligence alleged was a defective connecting rod, the absence of a conductor to apply the rear brake, and a fractious horse on one car, and the neglect of the driver of the other car to stop and permit plaintiff to alight. The trial court instructed the jury that there were four grounds of recovery, and that they might stand or fall sep-

arately. This Court did not think that the pleadings would support the instruction; holding that if the breaking of the rod was accidental, and the car rushed upon the horses, causing the horses to run away, the declaration was not so drawn as to place the company in fault for the sole neglect of the driver of the other car to stop and invite his passengers to alight; that it would have to contain allegations of fact directly contrary to what was charged. In other words, the allegations had been made dependent. But here no such difficulty presents itself. It was immaterial whether the conduct of the engineer was the result of inexperience or carelessness. The allegation not proven must be regarded as immaterial. *Thompson v. Railway Co.*, 91 Mich. 255.

The averment as to the rate of speed of the train is not that the train was running at an unusual rate of speed, but that it was being run at a speed of 40 miles an hour, in a negligent and careless manner. While it is not necessarily negligent to run a train at the usual rate, or at 40 miles an hour, it is negligent to maintain the usual rate of speed without observing the usual precautions and danger signals to warn the public of its approach.

The statute makes it the duty of railroad companies to restore the highway to its former state, as near as may be, and to construct suitable crossings for the passage of teams. How. Stat. § 3323. The obligation imposed by the statute continues until its proper discharge. By the transfer to it, the defendant took subject to all the obligations and duties prescribed by the general railroad laws of the State. Act No. 10, Laws of 1889.

The fact that the township did some work on the roadway of this approach, in an endeavor to make it passable, did not relieve defendant from its obligations. The township could not waive performance so as to affect plaintiff's right of action. Even a license by the municipality to

place a dangerous obstruction in a public highway does not relieve the licensee from liability to an individual who may be injured thereby. *Wolfe v. Telegraph Co.*, 33 Fed. Rep. 320. It may be true that plaintiff knew the character of this approach, but she assumed no risk incident to or consequent upon the failure of duty upon the part of defendant. It was held in *Maltby v. Railway Co.*, 52 Mich. 108, that the right to use a public highway, even though it be in a dangerous condition, can not be abridged by the neglect to repair it.

The question of plaintiff's negligence was properly, and we think fairly, submitted to the jury. The roads were soft; the morning misty. When 40 rods from the crossing she stopped, looked, listened, and spoke to her daughter, who was with her, about listening for trains. Approaching the crossing, she noticed children coming south upon the railroad track. When she reached a point 150 feet from the crossing, she again stopped, looked, and listened, and then started up the approach. When within 30 feet of the tracks, her daughter told her that the children had left the track. She looked and saw the train, and then attempted to back away from it, and had backed about the length of the buggy, when the three sharp whistles were given, whereupon the horse reared, and jumped down the embankment. The horse was quiet and manageable until the whistles sounded. It is not claimed that plaintiff was moving towards the crossing when the whistles were given; indeed, the engineer says that he saw plaintiff as he emerged from the cut, and that he saw the horse rear and the buggy tip over, and then he gave the whistles. Plaintiff was not injured on the crossing. She did discover the approach of the train when it must have been at least 30 to 40 rods from the crossing. She did not attempt to cross, but stopped and backed her horse still further from the train. The engineer saw her, according to his own

testimony, when he was from 60 to 80 rods away. Plaintiff's testimony tended to show that no whistle was then sounded, nor until the train was from 24 to 26 rods from the crossing. Plaintiff was at a safe distance from the crossing, had the approach been properly constructed, and had the engineer refrained from sounding his whistle. In going to the point where injured, she was justified in assuming that the engineer would exercise care, in view of her presence upon this narrow approach. *Geveke v. Railroad Co.*, 57 Mich. 589.

We find no error in the record, and the judgment is affirmed.

MORSE, C. J., LONG and MONTGOMERY, JJ., concurred with McGRATH, J. GRANT, J., concurred in the result.