JOHNSON v. DETROIT & MACKINAC RAILWAY CO.

1. RAILROADS—KILLING STOCK—DEFECTIVE CATTLE-GUARDS—INSTRUCTIONS TO JURY.

In an action for the value of cattle killed on a railroad track in consequence of an alleged defective cattle-guard, the charge of the court was examined, and *held* not to warrant the contention that the jury were instructed, in effect, that defendant had not done its full duty in providing a cattle-guard approved by the railroad commissioner unless the guard provided was in fact sufficient to prevent cattle passing upon the track.

2. SAME—NEGLIGENCE.

It was not error to instruct that if the cattle crossed the guard because it was out of repair, or if they passed between it and the wing fence, the verdict should be for plaintiff; it appearing that the guard had been in the same condition as at the time of the accident for more than two months. 2 Comp. Laws, § 6294.

135 MICH.—23.

3. SAME—REQUESTS TO CHARGE.

> There being testimony tending to show that some of the cattle passed over the portion of the guard not claimed to be defective, it was error to refuse to instruct that as to any such cattle there could be no recovery.

4. SAME—EVIDENCE.

> It was not reversible error to permit witnesses to state the condition of the guard the day after the cattle were killed, without first proving that its condition had remained unchanged; subsequent testimony having supplied the omission.

5. SAME—EXPERT TESTIMONY.

> Defendant's roadmaster, who had examined the guard after the accident, should have been permitted to testify as to its efficiency to turn stock, as against the objection that this was one of the issues for the jury.

6. SAME—CONCLUSIONS.

> A question asked of a witness who had given an incomplete description of the guard, as to what, if any, other defect he noticed therein, was not objectionable as calling for a conclusion.

7. SAME.

> It was error to refuse to permit a witness to testify that he had seen the cattle in question pass over another guard of like construction near by, which was in no way defective.

8. SAME—TRIAL—ARGUMENT OF COUNSEL.

> In an action against a railroad company for killing cattle, repeated statements by plaintiff's counsel in his argument to the jury, that any money given plaintiff by their verdict would not come out of the pocket of anybody except defendant corporation, and urging them to place themselves in plaintiff's position, coming into court asking that "this large corporation pay to him what his cattle were reasonably worth," were ground for a reversal.

Error to Iosco; Connine, J. Submitted November 18, 1903. (Docket No. 131.) Decided January 5, 1904.

Case by Nelson Johnson against the Detroit & Mackinac Railway Company for killing cattle. From a judgment for plaintiff, defendant brings error. Reversed.

*Charles R. Henry*, for appellant.

*Jahraus & Rawden*, for appellee.

· CARPENTER, J.   On the 26th of June, 1902, seven head of cattle belonging to the plaintiff were struck, while on the defendant's track, by its locomotive, and killed.   These cattle went onto the track from the highway, at which there was a cattle-guard, designated as the "Positive" cattle-guard, and described as follows in defendant's brief:

"It consists of four sections,— two sections 26 inches wide, between the rails, and one section on the outside of each rail, 22 inches wide.   This cattle-guard consists of a series of ridges or billows, passing over each tie, and about 2½ inches above it, and down between the ties; and in placing the guard they had to dig out between the ties and hew off the edge of the ties, spiking the guard to these ties.   The effect of cattle attempting to walk over these guards was that they would be thrown upon their knees, their feet slipping down between the ridges or billows created by the shape of the guard."

This cattle-guard was approved by the commissioner of railroads.   In March, 1902, a freight car ran off the track and flattened down a portion of this guard, about 10 inches in width, on the north side of each rail.   Though defendant contended to the contrary, the testimony of the plaintiff tended to prove that this defect was never fully repaired.   The testimony of the plaintiff also tended to prove that there was a sufficient space for the passage of these cattle between the cattle-guard and the adjoining fence, and that by reason of these two defects the cattle made their entry upon the track.   The testimony of defendant tended to prove that the cattle, or at least some of them, in going on the track, passed over portions of the cattle-guard which had never been out of repair.   The issue was submitted to the jury, who rendered a verdict for the plaintiff.   We are asked to reverse the judgment of the court below for errors which can be most clearly discussed in the following order:  (*a*) In the charge of the court;  (*b*) in admitting and excluding testimony; and (*c*) in the argument of plaintiff's counsel.

1. The law which determines defendant's obligation

in the premises is contained in section 6294, 2 Comp. Laws. We quote such portions of said section as are material to this case:

"Every railroad company * * * shall erect, and maintain in effective condition of repair, fences on each side of the right-of-way to their respective roads. * * * Such right-of-way fences shall be provided with suitable connecting fences and cattle-guards at all highway and street crossings, which shall at all times be kept in effective repair, and sufficient to prevent stock of all kinds from passing upon the track of the railroad at such highway or street crossings: * * * *Provided,* that any fence or cattle-guard which shall have the written approval and indorsement or the commissioner of railroads of this State, and which fence is not less than four and one-half feet in height, and is otherwise equal, in durability, strength, and sufficiency to turn animals and stock, to the fences herein described, shall be a legal railroad fence or cattle-guard. * * * And until such crossings, fences, and cattle-guards, as hereinbefore provided for, shall be duly constructed, the company or corporation owning or operating such road shall be liable for all damages done to cattle or other animals thereon which may result from the neglect of such company or corporation maintaining or operating such road to construct and maintain in repair such crossings, fences, and cattle-guards, as aforesaid; * * * and after such company or corporation shall have constructed such crossings, fences, and cattle-guards, as hereinbefore provided, and while they shall continue to maintain the same in good and sufficient repair, it shall not be liable for any such damages as aforesaid, unless negligently or willfully done."

It is contended that the trial judge charged the jury, in effect, that defendant had not done its full duty in providing a cattle-guard approved by the commissioner of railroads unless said cattle-guard was in fact sufficient to prevent cattle passing on the track. We think this an unwarranted construction of the charge. This is proved by the following quotation, with which, in our judgment, the entire charge is in harmony:

"It is, however, provided in this same statute that a cattle-guard that has been approved by the railroad com-

missioner of the State shall be deemed a reasonable and sufficient cattle-guard; and, if this cattle-guard had been kept as it was originally placed there, and if there was no question about the space between the cattle-guard and the fence, then there would not be any case here, and the plaintiff could not recover."

It is also contended that the court erred in charging the jury as follows:

"Now, if the cattle passed the metal guard, if they crossed it because it was out of repair, or if they passed beside the metal guard, and between it and the fence, and were killed by the cars of the defendant, then the plaintiff is entitled to recover the value of the cattle—the fair market value of the cattle—at that time."

Defendant contends that, even though the cattle-guard was out of repair, and even though the cattle passed between the guard and the fence, it was not liable unless the jury found that these defects constituted negligence. It is true that in *Smead* v. *Railway Co.*, 58 Mich. 200 (24 N. W. 761), this court decided that the railroad company, under a similar statute, was not bound to supply cattle-guards which trespassing animals could not possibly pass over, and that it complied with its obligation by using commensurate care. The application of that principle to this case by no means proves the charge under consideration to be erroneous. This court should not hesitate to say that the obligation of defendant to use due care to maintain the efficiency of the guard approved by the commissioner of railroads was a legal obligation, and that, if these cattle passed over the guard because it had been out of repair for over two months, there was negligence as a matter of law. It is equally clear, if defendant left a space between the fence and the cattle-guard sufficiently wide for the passage of cattle, that the court should say, as a matter of law, that it neglected to provide "suitable connecting fences and cattle-guards * * * sufficient to prevent stock of all kinds" (and this includes hogs and sheep, as well as cattle) "from passing upon the track."

The only fault in the charge of which complaint can justly be made consists of the failure of the court to instruct the jury, as requested by defendant:

"The defendant has offered evidence to show that some of the cattle, at least, passed over that portion of the guard which it is not alleged was defective, and, for at least so many of such cattle as passed over the guard where it was not defective, no recovery whatever can be had; and, unless you find that some of the cattle passed over said guard by reason of its defective condition, no recovery can be had."

The defendant did offer evidence tending to prove that at least some of the cattle passed over the portion of the guard not defective.    We doubt if the jury were informed, as they would have been if defendant's request on the subject had been given, and as they should have been, that, if some of these cattle passed over that part of the cattle-guard not defective, for their destruction there could be no recovery.    With this exception, the charge was a clear and accurate statement of the law.

2. Errors in admitting and excluding testimony.

(a) It is contended that the court erred in permitting witnesses to state the condition of the cattle-guard the day after the cattle were killed, without first proving that its condition was then the same as when the cattle passed over it.    It is a sufficient answer to this claim to say that testimony was subsequently introduced tending to show that the guard was practically in the same condition as when the cattle passed over it.

(b) The court refused to permit defendant's roadmaster, after he had stated the condition of the cattle-guard, to answer the following question preferred by defendant:

"From your knowledge of the operations of cattle-guards in deterring cattle and turning back stock, I ask you to state what condition this cattle-guard was in when you examined it after these cattle were killed,—what condition this cattle-guard was in, so far as being in condition suitable to turn cattle away and prevent cattle from passing over it?"

This testimony was excluded on the ground that it was

a question for the jury.  The court also refused to permit another witness of defendant, who had given an incomplete description of the guard, to answer this question: "What, if any, other defect did you notice in the cattle-guard?"  This decision was based on the ground that the question called for a conclusion.  The court also refused to permit another witness of defendant to answer this question: "I ask you if prior to the 26th day of June, 1902 (last), you have seen these same cattle pass over this other guard, where it was not bent down or in any way defective?"

It is the claim of the defendant that, after the cattle-guard was damaged in March, it was so repaired as to be as effective as when originally constructed.  If this claim were established, it would be a complete answer to the contention of plaintiff that the destruction of the cattle was a result of the cattle-guard being out of repair.  This excluded testimony certainly tended to establish this claim.  Neither can we say that the first of the above three questions was objectionable because it was one of the issues for the determination of the jury.  We think it was a proper question for opinion evidence.  The answer of an expert witness like the roadmaster of defendant corporation would afford legitimate aid to the jury.  See *N. & M. Friedman Co.* v. *Assurance Co.*, 133 Mich. 212 (94 N. W. 757).  Neither do we think the second of said questions objectionable on the ground that it called for a conclusion.

3. During the argument of plaintiff's counsel to the jury, defendant's counsel took exception to "all this line of talk where he says that it will not come out of Mr. Luce's pocket, or Mr. Bolen's pocket, but it will come out of this corporation."  To this the court said, "You may have an exception."  Thereupon plaintiff's counsel said:

"I repeat, this case is the case of Nelson Johnson against the railroad company, and not against any individual, and if you shall decide that this railroad has been negligent, through its officers and agents and servants, in

keeping up its roadbed, and not protecting the lives of cat-
tle that might stray over its right of way, and not protect-
ing the lives of those that are traveling upon its railroad,
I repeat that the money will come out of the corporation's
pocket, and not out of anybody else's. (Exception by de-
fendant's counsel.) I am asking that this corporation,
after it has failed to perform the duties the statute imposes
upon it, give us its just and honest value. (Exception by
defendant's counsel.) So I say to you, gentlemen of the
jury, in closing, look at this matter as between man and
man, and consider the circumstances that this man is in,
and take his position, when he comes here asking that this
large corporation pay to him what his cattle were reason-
ably worth. (Exception by defendant's counsel.) We
are not coming here asking for that which you would not
ask for if you were in the same position we are in. These
cattle belonged to him. These cattle were killed, as shown
by the evidence of their witnesses, because it was a defect-
ive cattle-guard, as we claim, and because they had failed
to perform its duty that the statute imposes upon it. Now,
we do not ask you to put your hands into any man's pocket,
but Nelson Johnson comes here and says to this defendant
corporation that 'You failed in your duty; you failed to
do what the law requires of you, and this man, the plain-
tiff in this case, has been injured thereby, and in all jus-
tice and fairness to him you should pay him what the
property is worth that you destroyed.' (Exception.)"

While we cannot say that included in these excepted
statements there is not an argument that is just and
legitimate, we cannot fail to see that, mingled with it, is
an improper appeal that the jury should take into consid-
eration, in determining this case, the fact that the plain-
tiff is an individual and the defendant a corporation. The
principles of justice, as well as our own decisions (see
*Laird* v. *Laird's Estate*, 127 Mich. 24 [86 N. W. 436];
*Thompson* v. *Railway Co.*, 91 Mich. 255 [51 N. W. 995];
*Mott* v. *Railway Co.*, 120 Mich. 127 [79 N. W. 3]; *Rut-
ter* v. *Collins*, 96 Mich. 510 [56 N. W. 93]; *Britton* v.
*Railroad Co.*, 118 Mich. 491 [76 N. W. 1043]; *Cluett* v.
*Rosenthal*, 100 Mich. 200 [58 N. W. 1009, 43 Am. St.
Rep. 446]), compel us to condemn this argument. If it is
true, as suggested in plaintiff's brief, that it was justified

by the attendant circumstances, he should have made those circumstances appear in the record.

We do not discover any other error in the case, or any other question which merits discussion.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.