OLIVER v. JESSUP'S ESTATE.

1. WORK AND LABOR—EVIDENCE—DECEDENTS' ESTATES.
   Where a claim is made against the estate of a deceased person, on the theory that the services rendered decedent and his wife became more onerous after the execution of a contract and lease, and decedent orally promised further compensation, evidence of what the entire services, including those compensated by the lease, were worth, is inadmissible.

2. SAME—EVIDENCE—UNSIGNED CODICIL.
   An unsigned codicil is likewise inadmissible to show the value of the alleged additional services, in the absence of evidence as to the circumstances under which it was written, or whether decedent expected it to take the place of the lease or whether it was intended as a voluntary gift.

3. TRIAL—CONDUCT OF COUNSEL.
   Failure of counsel to acquiesce in the rulings of the court is to be condemned.

4. WORK AND LABOR—VALUE OF SERVICES—EXCESSIVE VERDICT.
   Evidence examined in a case where a claim was made against the estate of a deceased person for compensation for additional services of a more onerous nature performed after the execution of a contract and lease, and *held* that a verdict for $930 was excessive.

Error to Lenawee; Chester, J. Submitted June 9, 1904. (Docket No. 7.)  Decided October 4, 1904.

Charles H. Oliver presented a claim against the estate of Charles E. Jessup, deceased, for services rendered. The claim was allowed by the commissioners, and the estate appealed to the circuit court. There was judgment at the circuit for claimant, and defendant brings error. Reversed.

*Fellows & Chandler,* for appellant.

*John E. Bird* and *John L. O'Mealey,* for appellee.

MOORE, C. J. The claimant produced testimony tending to show that he and his sister, younger than himself, entered the family of deceased when claimant was about 13 years old; that they were cared for, clothed, educated, and treated as decedent's children; that when claimant reached the age of 21 he and his sister continued in the house of decedent; that decedent's wife was in ill health for about two years and a half prior to her death, which occurred in May, 1899; that decedent died suddenly of heart failure, in 1901. His testimony further tended to show that decedent expressed satisfaction with the services performed, and said that claimant would get his pay for the same; that at one time he stated that claimant had talked some of leaving, but he told him if he would stay he would compensate him. He also gave testimony tending to show the value of the services performed. No suggestion was made in putting in his case that he had a life lease.

The estate claimed these services were performed under a written contract; that the claimant and his sister had accepted the terms and consideration of this contract, and had agreed to perform these services for an agreed consideration, and that claimant had been paid in full; that on January 29, 1898, after Mrs. Jessup had been ailing something over a year, the decedent and his wife executed to the claimant and his sister a life lease of his real estate, consisting of 127 acres of land, to take effect at the death of decedent and wife, the consideration of which was as follows:

"This lease is made in the consideration of the faithful service rendered by the parties of the second part [claimant and his sister] to the parties of the first part, and the further agreement of the parties of the second part that they are to remain with, care for, and serve the said parties of the first part during the lifetime of the said first parties, as they have heretofore done."

This paper was in the possession of claimant, and it appeared that after decedent's death claimant and his sister took possession of the premises, recorded the life lease, and had ever since been in possession of these lands.

The case was tried by a jury who rendered a verdict in favor of claimant of $930. The defendant has brought the case here by writ of error. It is insisted there was error in relation to the following: *First*, admissibility of testimony; *second*, conduct of counsel; *third*, the estate's requests and the charge of the court; *fourth*, the motion for a new trial.

1. It was the claim of defendant that all the services were rendered under this agreement, and that a verdict should have been directed in its favor. It was the contention of claimant that after this agreement was drawn the character and amount of the service required was changed from what had heretofore been done; that Mrs. Jessup had a cancer, which made the care of her more and more burdensome and disagreeable, and required so much care from himself and sister they had decided they must quit the work, when Mr. Jessup said to the claimant if he would remain he would pay him a further sum for his services.

Upon the trial claimant was allowed to show not only what the value of his services was during the illness of Mr. and Mrs. Jessup, but for five or six years prior thereto. At this time nothing had developed in relation to the lease, and in the claim filed pay was not asked for services prior to the commencement of the sickness of the Jessups. We do not think it can be said there was no testimony tending to show that the services required of claimant became more onerous after the lease was made,

and that there was an agreement for additional compensation.  *Goebel* v. *Linn*, 47 Mich. 489 (11 N. W. 284, 41 Am. Rep. 723).  If the jury found that fact was established, the claimant was entitled to a judgment, not for the full value of his services, for some of them were taken care of by the provisions of the lease, but to what the additional services were reasonably worth, less an offset, which we will mention hereafter.  The testimony, from any aspect of the case, was incompetent.

In 1878 Mr. Jessup made a will.  Claimant was allowed to show that attached to this will, under date of December 1, 1900, Mr. Jessup had written:

"To Charles H. Oliver I bequeath the sum of five hundred dollars ($500), and the two horses, and whatever farming tools belongs to me Charles Edward Jessup, Senior."

This was followed by showing that in the inventory the horses and farming tools were appraised at $350.  It is said this was in the nature of an admission that the services were regarded by Mr. Jessup as worth $850 at least, and this was so argued to the jury.  This paper was not signed by Mr. Jessup.  It is not shown under what circumstances he wrote it—whether he expected it would take the place of the lease or whether it was a voluntary gift.  It is clear that, whatever he had in mind, he did not see fit to give it effect by attaching his signature.  It should have been excluded.

2. Error is assigned as to the conduct of counsel.  As the case is to be reversed for other reasons, we will content ourselves with saying that the conduct of counsel in not acquiescing in the rulings of the court is to be condemned.  We have expressed our opinion of similar conduct in *Thompson* v. *Railway Co.*, 91 Mich. 255 (51 N. W. 995), *Cavanagh* v. *Township of Riverside*, 136 Mich. 660 (99 N. W. 876), and *Hillman* v. *Railway Co.*, ante, 184 (100 N. W. 399).

3. We do not deem it necessary to discuss the assign-

ments of error in relation to the charge, as the errors naturally grew out of the improper admission of the testimony.

4. A motion was made for a new trial. It was overruled. It has already appeared that in consideration of the life lease certain services were to be rendered. It is not shown when this agreement was modified. Mrs. Jessup lived only 15 or 16 months after the lease was made. The lease bound the claimant to continue to render to Mr. and Mrs. Jessup during their lifetime such services as he had heretofore rendered them. After Mrs. Jessup died, the claimant worked for Dr. Vaughn by the month. What attention he gave to Mr. Jessup was rendered either in the evening or at night. There was no competent testimony which would warrant the jury in rendering so large a verdict. It should have been set aside because it was excessive.

Judgment is reversed, and new trial ordered.

The other Justices concurred.