## PEOPLE *v.* MINDEMAN.

1. EVIDENCE—MAPS—ACCURACY.

   In a prosecution for the larceny of diamonds from a safe, a plan or drawing of the room in which the safe was situated was properly admitted after testimony had been introduced tending to show that the drawing indicated with approximate correctness the location of an adjacent point from which it was claimed the act of the respondent had been seen.

2. SAME—REMARKS OF TRIAL COURT.

   A statement of the trial judge that the situation could be cleared up did not amount to an expression of opinion as to the weight of evidence.

3. SAME—CRIMINAL LAW—LARCENY.

   Testimony given by a witness who might be implicated in the crime, that he did not commit the same, is admissible.

4. SAME.

   Testimony that respondent subsequently left the State and avoided an important business engagement is material.

5. CRIMINAL LAW—LARCENY—CORPUS DELICTI.

   Testimony that the diamonds were taken from a safe without the authority of the owner, and that respondent was seen in a suspicious attitude near the safe, is *prima facie* evidence that the crime of larceny had been committed.

6. EVIDENCE—TRIAL—INSTRUCTIONS—CREDIBILITY OF WITNESSES.

   It is error to charge the jury in a criminal case where respondent did not take the stand, that it is the duty of the jury to accept as true the undisputed testimony of a witness unless of such a conflicting nature as in itself to discredit it.

Exceptions before judgment from Calhoun; North, J. Submitted February 15, 1909. ( Docket No. 152.) Decided June 7, 1909.

George Mindeman was convicted of larency. Reversed.

*Weeks & Cooper,* for appellant.

*Howard W. Cavanagh,* Prosecuting Attorney, for the people.

MOORE, J.  The respondent was convicted of the
larceny of three diamond rings and a set of diamond ear-
rings, the property of Mrs. Murdock, which the people
claim were of the value of $2,000 or more.  The case is
brought here upon exceptions before sentence.

A brief statement of what is claimed by the people is
essential to an understanding of the questions involved.
Mr. and Mrs. Murdock were the occupants of several
rooms in Albion.  One of these rooms contained a bed, a
desk, some chairs, and a safe.  The diamonds which it is
claimed were stolen were kept in the safe.  Mr. Murdock
was interested in a projected electric road from Albion to
Charlotte, and was one of the owners of an old right of
way which had been obtained some years ago.  The re-
spondent and one Charles H. White, contractors and pro-
moters, opened negotiations with Mr. Murdock, looking
to a revival of the railroad project and a completion there-
of.  Some time during the business relations between
these men, Mr. Murdock broke his leg and was confined
to the room above mentioned.  The respondent and Mr.
White frequently saw him there, and it is claimed that at
their solicitation they were shown the diamonds and
knew where they were kept.  After Mr. Murdock was
able to be up and about, the respondent, upon one of his
visits, became drowsy, and, upon the request of Mr.
Murdock, occupied the bed which was near the safe.
Mrs. Murdock was not in the room, and Mr. Murdock
had occasion to go to the back room, and it is the claim
of the people that at this time the diamonds were taken,
though their loss was not discovered until some days
later.

One of the assignments of error relates to the admission
in evidence of a plan of the rooms.  Another relates to the
questioning of one of the witnesses by the trial judge and
an expression used by him which it is claimed amounted to
an expression of an opinion as to the weight of the evi-
dence.  These assignments may be considered together.
The plan is not in the record, so that we do not know just

how it appears. Evidence was given that it was approximately correct. A lengthy cross-examination then followed as to the rooms and the arrangement thereof, a part of which is as follows:

"There is a desk in that room taking up a couple of feet. Then room for a chair back of that two or four feet. Then comes the safe. It's over two feet. The bed stands right against the safe and is about four feet wide and about six feet from the bed to the north wall. The door from the office bedroom to the dining room swings back toward the bathroom partition. There is a door from the dining room to the kitchen which swings towards the south. The plan does not show the arrangement of those doors as they are in the apartment.

"*Mr. Weaver:* I think we will renew our objection to the introduction of this plat in evidence on the witness' own testimony. It cannot possibly serve any purpose here whatsoever.

"*The Court:* I shall overrule the objection at this time, because I think the situation can be cleared up. It is somewhat obscure now, to be sure.

"*Mr. Weaver:* We will take an exception.

"There are two water-closets on that floor, side by side. We have the use of the one nearest the kitchen. The water comes right through the wall from it into the kitchen. I was standing 15 or 18 feet away from it when I saw Mr. Mindeman through the doorway. I stood opposite the table near the east side and looked across the kitchen, across the corner of the dining room and across the bedroom to the safe. I stood there long enough to drink a glass of water and was facing the safe while drinking. When I got through I set the tumbler down and went out. I did not stand and watch Mindeman, but I see what he was doing, or tried to."

After the cross-examination was over, the judge asked the witness several questions and then ruled the plan might be received in evidence. The only way in which the plan was material was to show that, when the respondent was at the safe, Mr. Murdock could see him from where he was getting a drink of water. The evidence upon that subject justified the ruling of the trial court. The opinion of the judge did not relate to the

weight of the evidence, but related wholly to the question of whether, under the evidence, the plan as to its material part was approximately correct. We do not think either of these assignments is well taken.

Another assignment of error grows out of the testimony of Mr. White. It is said his testimony was immaterial. We quote from the brief:

"This testimony was highly prejudicial to the respond-ent in this case. It caused the jurors to believe that Mindeman was trying to shove the crime upon White, and when, later, the smooth, well-groomed, handsome Mr. White was introduced on the witness stand, he gained the good opinion of the jury by this indirect method. The responsibility of the crime was thrown upon the nervous, unprepossessing appearing respond-ent."

It has already appeared that Mr. White and the re-spondent had access to the room where the diamonds were, and knew where they were kept. After they were missed the respondent expressed an opinion to the officer that Mr. White had taken them and went with the officer to the room of Mr. White in his absence, and under the pretext of getting a shirt collar, searched a traveling bag belonging to Mr. White, claiming to the officer that he expected to find the diamonds there. It was also the claim of the people that, after the diamonds were taken, respondent absented himself from the State, though he had an important business engagement with Mr. White in the State. It was to meet this situation Mr. White was called. His testimony was material and important. Counsel say:

"The question raised by the fourth assignment of error is the admission of testimony tending to show criminal intent before *corpus delicti* had been established or any evidence offered to show that a crime had been commit-ted. In all trials for crime the prosecution must prove to the satisfaction of the jury and beyond a reasonable doubt the *corpus delicti* that a crime had been committed, be-fore evidence tending to implicate the party on trial is

introduced. This principle has always been regarded in cases involving the life and liberty of the citizen, and is generally strictly observed by the court"—citing many cases.

There is no question about the rule, and we think it was not violated in this trial. It was clearly shown that some one who was not authorized had removed the diamonds from the custody and possession of the owner under such circumstances as to warrant the inference of larceny.

Error is assigned upon the failure of the court to give the following request:

"In civil cases, where the mischief of an erroneous conclusion is not deemed remediless, it is not necessary that the minds of the jurors be free from all doubt. It is their duty to decide in favor of the party on whose side the weight of evidence preponderates; but in criminal cases, because of the more serious and irreparable nature of the consequences of wrong decision, the jurors are required to be satisfied beyond any reasonable doubt of the guilt of the accused, or it is their duty to acquit him."

As to that feature of the case the court charged:

" The defendant having the benefit of the presumption of innocence at all times until that presumption is overcome by such a measure of proof as removes from your minds all reasonable doubt as to the guilt of the accused. In this case the evidence is entirely circumstantial and must be received by you and properly sifted to arrive at a conclusion, unless it be of such a nature and furnishes such a complete chain of evidence as to exclude every other reasonable hypothesis, except the guilt of the party accused, and unless you find that the evidence in this case furnishes such a complete chain that you are unable by the exercise of due care to see any other explanation for these circumstances except the guilt of the accused, your verdict should be not guilty. If, after considering all the evidence in the case, you have any reasonable doubt as to the guilt of the accused, it is your duty as jurors in this case to bring in a verdict of not guilty, and by a reasonable doubt I do not mean mere possible doubt, but I mean that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of

the jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge made against the defendant. The burden of the proof is on the prosecutor. All the presumptions of law, independent of evidence, are in favor of innocence, and every person is presumed to be innocent until he is proven to be guilty. If upon such proof there is reasonable doubt remaining, the accused is entitled to an acquittal, for it is not sufficient to establish a probability, even though a strong one, arising from the doctrine of chance that the act charged is more likely to have been committed than not; but the evidence must establish the truth of the fact to a reasonable and moral certainty, a certainty that convinces and directs the understanding and satisfies the reason and judgment of those who are bound to act conscientiously upon it."

The same rule of law was stated in different verbiage in other places in the charge. The request was fully covered.

Error is assigned upon that portion of the charge reading:

"I also say to you, as a matter of law, that it is your duty to accept as true the undisputed testimony of a witness, unless such testimony is of such a conflicting nature as in itself to discredit it."

This is not a correct statement of the law. No witnesses were produced on the part of the respondent. It was the right and the duty of the jury to decline to accept as true the testimony of any witness, if, after considering all the testimony and the circumstances surrounding the case, they did not believe the testimony to be true.

The case is reversed, and a new trial ordered.

OSTRANDER, HOOKER, McALVAY, and BROOKE, JJ., concurred.