# OCTOBER TERM, 1910.*

PEOPLE *v.* TRINE.

1. BURGLARY—CRIMINAL LAW—CORPUS DELICTI—EVIDENCE.

    It is sufficient evidence of the *corpus delicti*, in a prosecution for breaking and entering a store, that the rear door was broken open while the store was closed for the night, and that articles were taken from the stock.[1]

2. SAME—REASONABLE DOUBT.

    Although the court may not be able to say that the elements of the crime have been proved beyond a reasonable doubt, the testimony should be submitted to the jury, if it tends to establish the necessary elements.

3. SAME—TIME OF COMMITTING.

    Whether or not the store was broken into in the nighttime, is a question for the jury, where the breaking occurred after the store was closed at nine o'clock in the evening and was discovered before sunrise, about seven o'clock next morning.

4. SAME—EVIDENCE.

    It was error to admit evidence that respondent had in his possession, at the time of his arrest, a suit case and other articles similar to goods kept in the store, where the articles in respondent's possession were not shown to have been the property of the merchant, or identified as taken from the store. HOOKER and MOORE, JJ., dissenting.

5. CRIMINAL LAW—CONDUCT OF ACCUSED—EVIDENCE.

    Evidence was admissible concerning the conduct of accused, such as false statements concerning articles which he had, and which were alleged to have been stolen, his absconding after the crime, and his presence in the town at the time the offense was committed.

6. SAME—ADMISSIONS—STATEMENTS TO OFFICER.

    And no error was committed in receiving in evidence statements made by the respondent to the officer who arrested him, when the statements were not in the nature of confes-

---

* Continued from Vol. 163.

[1] As to proof of *corpus delicti* in criminal case, see note to *Bines v. State* (Ga.), 68 L. R. A. 33.

sions and no promise of leniency was made by the officer, who merely advised respondent that the best thing he could do would be to tell the truth.

7. SAME—CORRESPONDENCE—SEARCHES AND SEIZURES.

A letter tending to incriminate respondent, found in his rooms when they were searched, was competent evidence, even though it was secured without a search warrant.

8. SAME—HUSBAND AND WIFE—EVIDENCE OF WIFE.

It was prejudicial error for the prosecuting attorney to call respondent's wife as a witness, without first obtaining the consent of the accused, who was compelled to make the objection that her testimony was incompetent under 3 Comp. Laws, § 10213.

Exceptions before sentence from Calhoun; North, J. Submitted October 21, 1910. (Docket No. 151.) Decided December 22, 1910.

Floyd Trine was convicted of breaking and entering in the nighttime, a store, not adjoining to or occupied with a dwelling house. Reversed.

*E. J. Dennison*, for appellant.

*Franz C. Kuhn*, Attorney General, *H. W. Cavanagh*, Prosecuting Attorney, and *Fred Cavanagh*, Assistant Prosecuting Attorney, for the people.

HOOKER, J. The testimony offered by the prosecutor in this case tended to prove that the complainant owned a store in the city of Albion, and that upon the night of December 18th, or thereabouts, after 9 p. m. and before 7 a. m. of the following day, a panel was broken in a rear door, and access obtained to the interior of the store; that this was discovered about 7 a. m. of December 19th; also that at that time some money was found to be missing from the cash register or drawer. A few days later it was discovered that some articles of clothing were missing from the store. Some months later defendant was found in possession of some clothing claimed to be the missing articles, and he has been convicted of breaking and entering a store,

''not adjoining to or occupied as a dwelling,'' in the night-time, with burglarious intent.	The case is before us on exceptions before sentence.

Corpus Delicti.	There was testimony in the case fairly tending to show the breaking and entering of such a store, and stealing some of complainant's property in the night-time.	This *prima facie* established the *corpus delicti,* and, under the most rigid rule, made proof to connect defendant with the transaction admissible.	*People* v. *Mindeman,* 157 Mich. 120 (121 N. W. 488).	It is true that we cannot say that each of these elements was proved beyond a reasonable doubt.	That is usually a question for the jury, and such proof is not a prerequisite to the introduction of testimony identifying a defendant as the law-breaker.

Whether this occurred in the nighttime was an open question to be decided upon the probabilities.	It was after dark and the breaking was discovered soon after daylight, at any rate before sunrise.	There was enough in the circumstances to warrant the jury in concluding that it occurred before daylight, and such conclusion is therefore final.

Evidence of Defendant's Guilt.	The connection of the defendant with the transaction was sought to be established:	*First,* by his possession of clothing; *second,* by his conduct; *third,* by his declarations.

Counsel for defendant contend that his discovery in the possession of the clothing was too remote in point of time to admit of any presumption of guilt therefrom.	Standing alone it is probable that such possession would be very slight evidence that he took these articles unlawfully on that, or perhaps any, occasion; but in conjunction with other facts and circumstances, such a conclusion might be a natural and proper one.	There is evidence that he made false statements about the clothes, that he was in Albion that night, that he had new clothes immediately afterwards, that he went away trying to conceal his whereabouts, that he wrote to his brother that if he should tell

where he was, it would get him into trouble, and that the officers were after him, and he did not want to spend five years in jail, and to destroy the envelope and letter, but to put down the fictitious name and address, so that he would not forget them, and "for God's sake, don't forget what I said or say a single word to any person, or my life is in danger." If it be conceded that this was admissible testimony, there was a proper case for the jury. *People v. Carroll*, 54 Mich. 334 (20 N. W. 66).

In *People* v. *Wood*, 99 Mich. 621 (58 N. W. 639), we held that:

"The jury were properly instructed that the possession of stolen property found with persons accused of burglary is not *prima facie* evidence of the burglary, but, if they found that whoever broke and entered the mill stole the flour therefrom, then, in whosesoever possession the flour was found shortly after, it would be evidence of larceny, and they would be justified in finding such parties guilty of burglary, as well as of larceny."

See, also, *People* v. *Hogan*, 123 Mich. 233 (81 N. W. 1096).

**Errors in Admitting Evidence.** (*a*) *Possession of other articles.* It was competent to show that at the time defendant was detected in possession of the clothing, he also had a suit case, cap, and other articles similar to those which were in the store at the time of the larceny, although they had not been missed, and notwithstanding the fact that there was no charge that they had been stolen, and the owner could not testify that they had been taken unlawfully on that or any other occasion. The testimony of defendant's wife's mother that he had such articles soon after the breaking was also competent. The value of such testimony would depend upon other facts and circumstances.

(*b*) *Conduct of defendant.* The conduct of a defendant is always admissible, *e. g.*, his falsifications regarding the property found in his possession, or his whereabouts at

the time the offense was committed, attempts to abscond, etc., etc.

(c) *Declarations.*   The deputy sheriff was allowed to testify to conversations with defendant, at the time of their first interview, and later.   At such times he said to defendant that he " would like to get at the bottom of the thing," and he testified that he might have told him on the first occasion, as he did later, at the store and at the jail, that " the best thing he could do was to tell the truth, so that if he was innocent, we would know it."

We are unable to find in these conversations anything in the nature of confessions that he committed the offense, but defendant did make statements which, though denials, were, by reason of their falsity, some evidence in corroboration.   Among them was the statement:

"My God, I must have been crazy; I don't know why I cut them out."

This referred to the labels on the garments at the time of the first conversation, but which were removed later. Looking at all of this evidence, it is very doubtful if the statements were made from any hope of leniency.   No such ,promise was made, or expectation justified, unless inferable from the statement made by the officer, that it would be better for him to tell the truth.   It was proper to submit these questions to the jury, which the learned trial judge did.   *People* v. *Howes,* 81 Mich. 401 ( 45 N. W. 961 ); *People* v. *Maxfield,* 146 Mich. 104 ( 108 N. W. 1087 ); *People* v. *Flynn,* 96 Mich. 279 ( 55 N. W. 834 ); *People* v. *Warner,* 104 Mich. 339 ( 62 N. W. 405 ); *People* v. *Owen,* 154 Mich. 574 ( 118 N. W. 590, 21 L. R. A. [ N. S.] 520 ), and cases cited.

A letter and envelope proved to be in the handwriting of the defendant were introduced against objection.   The letter follows:

"ALBION, MICH. October 19, 1909.
"Mr. LEON TRINE,
          "Jackson, Mich.
     " *Dear Brother:*   I suppose you thought I was kidding

but I am going away today, but don't tell anyone.    I'm in a hurry so don't think I could see you and maybe it will be some time before I ever will.    Bessie wants you to bring another of those aprons so don't forget it, but this thing I want you to keep a secret from everyone if you tell any-one, it will get me into trouble, and I don't like to spend five years in jail.    When you go to the post office ask for mail for O. B. Ball, that's my letter, I don't want a person to know where I am, don't forget it now I dare not write to home or some one will know where I am, so just ask for O. B. Ball, general delivery, and it will be all right. Soon you get it then destroy the envelope and give the letter to ma, but be careful and it will be all right.    De-stroy this letter so no one will not see it but put down the name so you won't forget it anyway ; I said when I leave it would be in a hurry, and I never be in Albion again, for years to come.    Maybe I can see you some times, but how or when I don't know so I will close for this time, but for God's sake don't forget what I said, or say a word to a single person or my life is in danger, so good bye.

"Your Brother,        F. T."

The envelope is addressed, "Mr. Leon Trine, Jackson, Michigan.    General Delivery." If this letter was ob-tained with other property by the officer at Grand Rapids, from defendant's effects, at his boarding house, as his counsel claim, our attention is not called to the proof of the fact, but this is immaterial.    The testimony was ad-missible under the rule laid down in the cases of *Cluett* v. *Rosenthal*, 100 Mich. 193 (58 N. W. 1009, 43 Am. St. Rep. 446), and *People* v. *Campbell*, 160 Mich. 112 (125 N. W. 42).

We are of the opinion that there was testimony justify-ing a submission of the case to the jury.

The action of the prosecuting officer in calling defend-ant's wife to the stand as a witness against her husband, without first getting the consent of the defendant, was improper, and may well have prejudiced his case. , This was within the criticism of such conduct in the cases of *People* v. *Van Alstine*, 57 Mich. 82 (23 N. W. 594), and *Laird* v. *Laird's Estate*, 127 Mich. 27 (86 N. W. 436); *Thompson* v. *Railway Co.*, 91 Mich. 255 (51 N. W. 995);

*Johnson* v. *Railway Co.*, 135 Mich. 360 (97 N. W. 760), and cases cited; *Cavanagh* v. *Riverside Township*, 136 Mich. 660 (99 N. W. 876); *Hillman* v. *Railway*, 137 Mich. 184 (100 N. W. 399); *Oliver* v. *Jessup's Estate*, 137 Mich. 645 (100 N. W. 900); *Spencer* v. *Simmons*, 160 Mich. 292 (125 N. W. 9). Such errors by the prosecuting officer are not easily cured. *People* v. *Treat*, 77 Mich. 350 (43 N. W. 983); *People* v. *Nichols*, 159 Mich. 355 (124 N. W. 25). The statute prohibits testimony by a wife against a husband without his consent. By calling defendant's wife, he was compelled to assert his nonconsent, which was thereby brought to the attention of the jury, who might naturally draw prejudicial inferences.

The conviction is reversed, and the cause remanded for a retrial.

MOORE, J., concurred with HOOKER, J.

BLAIR, J.   I concur in reversing the case upon the ground stated, but am of the opinion that evidence of the possession of the suit case and other articles not shown to have been the property of the complainant, or to have been taken from the store, was incompetent.

MCALVAY and BROOKE, JJ., concurred with BLAIR, J.